IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 33254

| JASON C. SMITH, | ) | Boise, June 2008 Term |
|---|---|---|
| | ) | 2009 Opinion No. 22 |
| Petitioner-Appellant, | ) | Filed: February 10, 2009 |
| | ) | Stephen Kenyon, Clerk |
| v. | ) | |
| | ) | AMENDED OPINION, THE |
| STATE OF IDAHO, | ) | COURT'S PRIOR OPINION |
| | ) | DATED FEBRUARY 9, 2009 IS |
| Respondent. | ) | HEREBY WITHDRAWN |
| | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Honorable John C. Hohnhorst, District Judge.

The decision of the district court is <u>reversed</u> and <u>remanded</u>.

Molly Huskey, State Appellate Public Defender, Boise, for appellant. Sara Thomas argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Mark Kubinski argued.

_____

HORTON, Justice.

Jason Smith was incarcerated for the 1998 rape of a fifteen-year-old girl. Prior to his release, he was referred to the Sexual Offender Classification Board (the Board or SOCB) to determine whether he should be classified as a violent sexual predator (VSP). The Board classified Smith as a VSP. Smith sought judicial review of that decision. After conducting an evidentiary hearing, the district court upheld the Board's decision. We conclude Smith's designation was not constitutionally sound and, therefore, reverse and remand with instructions to vacate Smith's designation as a VSP.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are mostly undisputed in this case.[1] In 1990, Smith, at the age of fourteen, pled guilty to lewd conduct with a minor under sixteen for anally raping a five-year-old that he was

_____

[1] Smith disputes the dates associated with one of the rapes, but the district court found his testimony unconvincing because Smith did not dispute any of the dates in the present record until the Board classified him as a VSP. The district court also found that the disputed dates, although important to the Board's designation, were not dispositive.

babysitting.  At the time of the offense, Idaho did not have a statute for male rape.  Smith was committed to the Idaho Department of Health and Welfare, where he completed a twelve-week sex offender treatment program.  The program took Smith six months to complete because of his behavior.

In 1993, after a second victim came forward, Smith pled guilty to one count of male rape, in violation of I.C. § 18-6108.  Ultimately, Smith was sentenced as an adult to thirty days in county jail and committed to the custody of the Idaho Department of Health and Welfare until the age of twenty-one.  Prior to being sentenced, Smith was arrested for burglary.  He was sentenced to five years, with one year fixed and placed on the 180-day retained jurisdiction program.  He was thereafter placed on probation.

In 1998, Smith pled guilty to rape, in violation of I.C. § 18-6101(1).  The rape charge stemmed from a sexual relationship with a fifteen-year-old girl.  At the time of this offense, Smith was twenty-one and on felony probation for the burglary.  Smith was sentenced to eight years imprisonment, with three years fixed, concurrent with the earlier sentence for the burglary.

In 2005, Smith admitted to committing a third male rape prior to the 1990 rape, which has remained uncharged.  Smith testified that he admitted to this rape only because he was required to complete a polygraph test.  He testified that the victim was five or six years old at the time of the attack.

Prior to Smith's release in late 2005, a psychosexual evaluation was conducted and Smith was referred to the Board to determine whether he should be designated as a VSP.  The psychosexual evaluation was included in the information presented to the Board.  The Board determined that Smith was a VSP and notified him of their decision.  Smith sought judicial review of that decision by the district court.  The district court was provided with a sealed record containing the documents that the Board relied on in making its determination to designate Smith a VSP.  After an evidentiary hearing, the district court upheld the Board's decision.  Smith appeals, contending that the Board, the district court, and this Court have violated his constitutional rights.

## II. ANALYSIS

We begin by acknowledging the obvious:  Smith's history of violent deviant sexual behavior is such that the Board's designation as a VSP may well be warranted.  The important question presented by this appeal, however, is not whether he deserves that label.  Rather, the

2

question that is the focal point of this Court's inquiry is whether the State of Idaho has labeled Smith as a VSP in a fashion that comports with his constitutional right to due process. We first consider the constitutional flaws in the statutory scheme and next examine whether the proceedings before the district court rectified these flaws. We then consider Smith's claim that he did not receive effective assistance of counsel in the proceedings below.

## A. The statutory framework for VSP designation in Idaho presents significant constitutional shortcomings.

### 1. The Statutory Framework

Designation as a VSP is based on the provisions of Idaho's Sexual Offender Registration Notification and Community Right to Know Act (the Act or SOR Act). I.C. §§ 18-8301, *et seq.*; *Lightner v. State*, 142 Idaho 324, 325, 127 P.3d 227, 228 (Ct. App. 2005). Only offenders convicted of certain specified crimes are eligible for designation as VSPs.[2] The Board is charged with the duty of considering for VSP designation those inmates scheduled for release who have been referred by the department of correction or the parole commission. I.C. § 18-8314(1); IDAPA 57.01.01.031.02. Smith was such an inmate.[3] A VSP designation is based upon the Board's determination that the offender continues to "pose a high risk of committing an offense or engaging in predatory sexual conduct." I.C. § 18-8303(15). The Board's rules provide that "[a] sexual offender shall be designated as a VSP if his risk of re-offending sexually or threat of violence is of sufficient concern to warrant the designation for the safety of the community." IDAPA 57.01.01.171. In reaching this decision, the Board is required to "assess

---

[2] The offenses that may result in a VSP designation include: I.C. §§ 18-1506 (Sexual Abuse of a Child Under 16); 18-1506A (Ritualized Abuse of a Child); 18-1507 (Sexual Exploitation of a Child) (added in 2006); 18-1508 (Lewd Conduct with a Minor Under 16); 18-4003(d) (Murder Committed During Rape); 18-4502 (First Degree Kidnapping for the purpose of committing rape, the infamous crime against nature, serious bodily injury upon the person kidnapped, or any lewd and lascivious act upon a child under age 16); 18-6101 (Rape (excluding subsection (1) when the offender is eighteen years of age or younger)); 18-6108 (Male Rape); 18-6602 (Incest); 18-6605 (Infamous Crime Against Nature); 18-6608 (Forcible Sexual Penetration with a Foreign Object). I.C. § 18-8314(1). Additionally, recidivists, as defined by I.C. § 18-8303(12), may be reviewed for VSP designation. *Id.*

It is worth noting that the statutory definition for a VSP requires no showing that the offender used force or violence in the predicate offense, nor does it require a finding that the offender represents a threat to use force or violence in the commission of future crimes. Rather, I.C. § 18-8303(15) provides the following definition:

"Violent sexual predator" means a person who has been convicted of an offense listed in section 18-8314, Idaho Code, and who has been determined to pose a high risk of committing an offense or engaging in predatory sexual conduct.

Thus, any offender who has been convicted of a sexual crime may be characterized as a VSP, if that individual is "determined to pose a high risk of committing an offense or engaging in predatory sexual conduct."

[3] The record before this Court does not reveal which of these two entities initiated the Board's consideration of Smith for VSP designation.

3

how biological, psychological, and situational factors, may cause or contribute to the offender's sexual behavior." IDAPA 57.01.01.170. Once the Board determines whether to designate the offender as a VSP, it must make written findings that include a risk assessment of the offender, the reasons upon which the risk assessment is based, the Board's determination whether the offender should be designated, and the reasons upon which the determination is based. I.C. § 18-8314(7); IDAPA 57.01.01.173.

Apart from submitting to a mandatory[4] psychosexual evaluation required by I.C. § 18-8317, the offender has no opportunity to provide input to the Board. "The Board and the evaluator conducting the psychosexual evaluation may have access to and may review all obtainable records on the sexual offender to conduct the VSP designation assessment." IDAPA 57.01.01.153. The offender is not given notice of the information being considered by the Board, much less an opportunity to be heard as to the reliability of that information. If the Board determines that the offender is to be designated as a VSP, the offender is notified of the Board's decision by way of a copy of the Board's written findings. I.C. § 18-8319(1).

If the Board makes a VSP designation, the offender has 14 days from receipt of the notice to seek judicial review. I.C. § 18-8319(3)(b). An offender designated a VSP is only entitled to challenge the designation on two grounds:

> (a) The offender may introduce evidence that the calculation that led to the designation as a violent sexual predator was incorrectly performed either because of a factual error, because the offender disputes a prior offense, because the variable factors were improperly determined, or for similar reasons;[5] and
> (b) The offender may introduce evidence at the hearing that the designation as a violent sexual predator does not properly encapsulate the specific case, i.e., the

---

[4]   I.C. § 18-8317 provides that the offender "shall submit to psychosexual evaluation." By way of rule, the Board has created an enforcement mechanism. The IDAPA rules that govern VSP designation provide:

> Public safety takes precedence over the decision of a sexual offender not to cooperate with the evaluation for VSP designation review. The sexual offender shall be informed that the board may designate an offender as a VSP if he fails to cooperate with the psychosexual evaluation process or refuses to release records for the board's VSP designation review.

IDAPA 57.01.01.151.

[5]   The Act, the Board's rules and guidelines do not identify any form of "calculation" that may lead to designation as a VSP. Similarly, the Act and the Board's rules and guidelines do not identify "variable factors."

4

offender may maintain that the case falls outside the typical case of this kind and, therefore, that the offender should not be designated as a violent sexual predator.[6]

I.C. § 18-8321(12). The scope of judicial review is limited to "a summary, in camera review proceeding, in which the court decides only whether to affirm or reverse the board's designation of the offender as a violent sexual predator." I.C. § 18-8321(4). Thus, the Act contemplates that judicial review will ordinarily occur without the offender having the opportunity to address the basis of the Board's decision. The Act does provide that "[w]here the proof, whether in the form of reliable hearsay, affidavits, or offers of live testimony, creates a genuine issue of material fact as to whether the offender is a violent sexual predator, the court should convene a fact-finding hearing and permit live testimony." I.C. § 18-8321(9). At the hearing, the State bears the burden of presenting a prima facie case justifying the Board's designation. I.C. § 18-8321(10). Despite this threshold burden of production, the offender ultimately bears the burden of proof, as Idaho Code § 18-8321(11) provides that "[t]he court shall affirm the board's determination unless persuaded by a preponderance of the evidence that it does not conform to the law or the guidelines."

### 2. The Constitutional Shortcomings

The oddity lies herein: while both parties may introduce evidence, neither party is provided with the record utilized by the Board to make its determination, except for a written summary of information relied upon by the Board and documents that are available to the parties by other means. I.C. § 18-8321(3). All records that contain witness or victim names or statements, reports prepared in making parole determinations, or other "confidential" records are withheld from disclosure to the offender, his attorney, and even the prosecutor, and are available only to the district court for the purpose of reviewing the Board's determination. *Id.* The rules of evidence do not apply. I.C. § 18-8321(6).

In our view, there are significant constitutional shortcomings in the statutory procedure as a result of the lack of procedural due process afforded an offender. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). "[C]ertainly where the State attaches 'a badge of infamy' to the citizen, due process

---

[6] This provision eludes understanding. The Board's determination of VSP status requires an evaluation of the offender's risk of engaging in future behavior rather than evaluation of the underlying crime for which the offender was convicted.

comes into play." *Id.* (holding that state's designation of an individual as "habitual drunkard" attaches a badge of infamy, requiring the state to provide due process protections before applying such an unsavory label) (citing *Wieman v. Updegraff*, 344 U.S. 183, 191 (1952)). We take it as a given that the label of "violent sexual predator" is a "badge of infamy" that necessitates due process protections.

> The high court of New York has recognized that an individual's
>
> private interest, his liberty interest in not being stigmatized as a sexually violent predator, is substantial. The ramifications of being classified and having that information disseminated fall squarely within those cases that recognize a liberty interest where there is some stigma to one's good name, reputation or integrity, coupled with some more "tangible" interest that is affected or a legal right that is altered. More than "name calling by public officials," the sexually violent predator label "is a determination of status" that can have a considerable adverse impact on an individual's ability to live in a community and obtain or maintain employment.

*People v. David W.*, 733 N.E.2d 206, 210-11 (N.Y. 2000) (citations omitted); *see also People v. Bell*, 778 N.Y.S.2d 837, 843 (N.Y. Sup. Ct. 2003).

The Utah Supreme Court has recently addressed this issue. *State v. Briggs,* 2008 WL 5191446 (Utah Dec. 12, 2008). That court concluded that the provision of Utah's sex offender registration statute which requires the Utah Department of Corrections to identify an offender's "primary and secondary targets" implies that the offender is currently dangerous and violates his right to procedural due process unless the offender is provided with notice and an opportunity to be heard as to whether he is currently dangerous. *Id.* at *1. The court reasoned:

> By including information implying that the offender is currently dangerous, Utah's registry damages the offender's reputation and changes his legal status, depriving him of a protected liberty interest in reputation. Like the list of those who drank excessively in *Constantineau,* the statutorily mandated designation of "currently dangerous" changes the legal status of listed offenders. The registry attaches a "badge of infamy," officially designating listed offenders as prone to future criminality.

*Id.* at *8.

Idaho provides a computerized sex offender registry that is accessible to the public via the internet complete with photos of all sex offenders, along with their personal information including name, address, date of birth, and offense history. I.C. § 18-8323. Furthermore, there is a special link for those sex offenders designated as VSPs. This Court has recognized "the fact

6

that registration brings notoriety to a person convicted of a sexual offense . . . prolong[s] the stigma attached to such convictions." *Ray v. State*, 133 Idaho 96, 101, 982 P.2d 931, 936 (1999).

Designation as a VSP results in consequences beyond simply requiring the designee to register as a sex offender. Sex offenders need only update their information and photographs in the registry annually, while VSPs must do so every ninety days. I.C. §§ 18-8307; 18-8308. Non-VSP offenders may petition a court for relief from the duty to register after a period of ten years. I.C. § 18-8310(1). On the other hand, a VSP has no right to such relief. Thus, for an offender designated as a VSP, the scarlet letters are indelible.

While the duty to register as a sex offender is triggered simply by reason of conviction for a specified crime, classification as a VSP is based upon a factual determination of probable future conduct, i.e., that the offender poses a high risk of committing an offense or engaging in predatory sexual conduct. I.C. § 18-8314. This distinguishes Idaho's VSP system from a sex offender registry based solely on the fact of conviction of a predicate offense. As to the latter, the United States Supreme Court has concluded that sex offender registration laws do not violate the offender's procedural due process rights, noting the offender "has already had a procedurally safeguarded opportunity to contest" the charge. *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003); *see also Doe v. Tandeske*, 361 F.3d 594 (9th Cir. 2004). In reaching this conclusion, the Supreme Court emphasized that Connecticut's registry requirement is "based on the fact of previous conviction, not the fact of current dangerousness . . . [i]ndeed, the public registry explicitly states that officials have not determined that any registrant is currently dangerous." 538 U.S. at 4.

Under *Constantineau* and its progeny, procedural due process is a constitutional prerequisite to the state's ability to designate an individual a VSP. "Only when the whole proceedings leading to the pinning of an unsavory label on a person are aired can oppressive results be prevented." *Constantineau*, 400 U.S. at 437. This Court has stated:

> Procedural due process basically requires that a person, whose protected rights are being adjudicated, is afforded an opportunity to be heard in a timely manner. There must be notice and the opportunity to be heard must occur at a meaningful time and in a meaningful manner.

*Ada County Highway Dist. v. Total Success Inv., LLC,* 145 Idaho 360, 371, 179 P.3d 323, 334 (2008) (internal quotations omitted) (citing *Powers v. Canyon County*, 108 Idaho 967, 969, 703 P.2d 1342, 1344 (1985); *Cowan v. Bd. of Comm'rs of Fremont County*, 143 Idaho 501, 512, 148

7

P.3d 1247, 1258 (2006); *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999)).

In spite of the existence of well-established standards of procedural due process, Idaho's statutory scheme for VSP designation minimizes, at every turn, the possibility that an offender has the constitutionally required notice and opportunity to be heard. The offender is not provided notice or opportunity to be heard before the Board. At the district court level, the offender is provided only a summary of the information considered by the Board, presenting little meaningful opportunity to respond to specific information considered by the Board. The offender is given his first opportunity to be heard only if he can persuade the district court that there is a genuine issue of material fact whether he is a VSP. In the event that the offender clears this threshold hurdle, he then bears the burden of disproving the propriety of the designation, all the while being denied access to many of the documents upon which the designation may have been based.

In *People v. David W.*, *supra*, the New York high court considered whether a sex offender had been improperly classified as a "sexually violent predator." As is the case with Idaho's scheme, the offender was not notified of the information being relied upon, given a hearing or any opportunity to be heard prior to designation. Unlike Idaho, which imposes a burden on the offender to demonstrate error by a preponderance of the evidence, New York law placed the burden on the offender to demonstrate to a reviewing court, by clear and convincing evidence, that the designation was erroneous. The court concluded:

> The right to petition the sentencing court is not a substitute for an initial due process hearing because the defendant bears the burden of proving by "clear and convincing" evidence that his risk level should be modified. *Due process requires that the State bear the burden of proving, at some meaningful time, that a defendant deserves the classification assigned.* Here, the State did not bear the burden of proof at any proceeding before a neutral fact finder.
>    Defendant may or may not deserve a [sexually violent predator] classification, but without any notice and an opportunity to be heard before a determination is made, the risk level determination made below failed to comport with minimum State and Federal constitutional requirements of due process.

733 N.E.2d at 213 (emphasis added, citation omitted).

We do not question the legitimate state interest in identifying those offenders who pose a high risk of reoffending or engaging in predatory sexual conduct. However, the United States Constitution prohibits the state from doing so without affording the offender due process. In our

view, Idaho's statutory scheme violates an offender's right to procedural due process by failing to provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner and by placing the burden of proof on the offender[7] at the only hearing in which he is permitted to appear.

This conclusion does not end our analysis. Rather, we must consider whether the manner in which the district court handled the judicial review proceedings afforded Smith the due process which he was previously denied. We must further determine whether Smith has preserved his claims for appeal or is otherwise entitled to present these claims before this Court.

**B. The district court's actions did not cure the constitutional defects in Smith's designation as a VSP.**

The State argues that the manner in which the district court conducted the judicial review proceedings afforded Smith "more process than was contemplated by the SOR Act" and that this "procedure was more than adequate to satisfy due process." The State asserts that "Smith was given notice of the information relied upon by the SOCB and was given the opportunity to review the information."[8] Because Smith was not afforded access to the complete contents of the record before the district court, and because the governing statute specifically prohibited disclosure of critical documents, we disagree.

Smith was not provided access to key documents in the sealed file which were utilized by the Board and the district court in reaching their respective decisions. Although the dissent suggests otherwise, the record does not reflect a specific offer from the district court to provide the parties access to the contents of the sealed file. We recognize that the district court did cause presentence reports that were included within the file to be made available to the parties.

---

[7] I.C. § 18-8321(11) mandates that the district court "shall affirm the board's determination unless persuaded by a preponderance of the evidence that it does not conform to the law or the guidelines." The district court was clearly mindful of the statutory burden, as it quoted the language of the statute when it concluded: "Based upon the entirety of the record submitted, this court cannot say that it is 'persuaded by a preponderance of the evidence' that the SOCB's decision to designate Smith as a VSP was erroneous for either of the reasons specified in § 18-8321(12)."

In our view, placing the burden of proof on the individual whose liberty interests are at risk is inconsistent with due process requirements. *See People v. David W.*, 733 N.E.2d at 213. In making this statement, we recognize that the parties have not addressed the statutory assignment of the burden of proof in this appeal. For that reason, we do not decide this case on this basis. Rather, we conclude that the statutory denial of meaningful notice and an opportunity to be heard, both before the Board and in pursuit of judicial review, requires that Smith's designation be vacated. However, we anticipate legislative action to cure the constitutional infirmities of the VSP provisions of the Act and deem it appropriate to identify this additional constitutional shortcoming.

[8] We do not suggest that counsel for the State has deliberately misrepresented the record, particularly as the district court indicated that all documents in the sealed file had been made available to the parties. We recognize that appellate counsel for each of the parties has been challenged by their lack of access to the documents which were submitted to this Court under seal.

9

However, it did so under the authority of I.C.R. 32, by providing access to *court* files, rather than the sealed record that was the subject of these proceedings. Although the tenor of the district court's comments and the release of the presentence reports reflect the court's willingness to disregard the spirit of the nondisclosure provisions of the Act in an effort to protect Smith's due process rights, at no time did the district court expressly indicate its intention to disclose documents not otherwise available to the parties upon their request. We are unwilling to suppose that a district judge would deliberately violate the statutory mandate found in I.C. § 18-8321(3)(a).[9]

In the proceedings leading up to the evidentiary hearing, the district court inadvertently[10] mischaracterized the contents of the sealed file, stating that there was nothing in the sealed file that was not already in the possession of Smith or his counsel or available to them by way of copies of earlier presentence investigation reports (PSIs), case files, or public records. Although the district court's concern for Smith's due process rights is evident in comments at the proceedings leading up to the evidentiary hearing, the district court explicitly stated that the file did not contain materials that were not available to Smith.

In proceedings occurring in advance of the evidentiary hearing, the district court represented the contents of the sealed file as follows:

> Inside the envelope is a manila folder about an inch thick, an inch and a half thick. I have reviewed everything that is in the folder . . . Essentially, from what I can tell, everything which is in this folder are [sic] existing criminal case records in three criminal cases . . . .
> . . . .
> There is a copy of the psychosexual evaluation done in the statutory rape case.
>     The long and short of it is, is that everything I can find that is pegged down in these two files are existing case records of some kind. There is nothing new or different. I can't see that there is anything in the nature of, for example, witness statements from the prosecutor's files or police officers' files. This appears to be stuff that comes essentially from the clerk's file.
> . . . .

---

[9] The district court's colloquy with counsel suggests the opposite conclusion, as the district court recognized that such information was not permitted to be disclosed:

I guess the question then becomes, having looked at those materials, [Counsel], do you feel some
need to peruse all the reputed underlying records?
    The statute supposedly – well, the statute does in fact say that I'm not supposed to do that, The thing
about it, as I said earlier, there is nothing here that I think anybody hasn't already seen.

[10] In light of the district court's evident efforts to protect Smith's due process rights, we are of the abiding belief that the court's misstatements were unintentional.

10

So I guess what I'm telling you is it doesn't appear to me that there is anything that the Sex Offender Classification Board went and got separate and apart from existing documentation either in the hands of the Department of Corrections or the Parole Commission or the Clerk of the District Court. It doesn't appear to me that there is [sic] any confidential internal documents from investigating agencies, police departments, et cetera. It looks to be that all documents of that nature are things that have been attached to PSI's or materials of that type.

I guess what I'm telling you is if there is a reason for secrecy here, I don't know what it is . . . .

. . . .

The thing about it, as I said earlier, there is nothing here that I think anybody hasn't already seen. You know, the statute seems to contemplate that there are going to be documents and records of a secret nature such as things that the Department of Corrections or that the Sex [sic] Offender Classification Board went out and generated as a result of whatever their investigative process is. That does not appear to be the case here. These are all existing, historical record type documents.

. . . .

From what I can tell, by and large it is pretty, I don't want to say innocuous, but it is fairly routine type material. There is nothing that I can see in the record in that nature of some sort of secret interrogations or witness statements which have not been furnished. It's stuff right out of the case files and pretty much all the case files involving Mr. Smith.

The district court's characterization of the information in the sealed file as readily available to Smith and defense counsel was inaccurate. However, as is clear from the district court's written opinion, there are several items that the district court found to be significant in its decision to uphold the VSP designation to which Smith was not provided access and could not be found in case files, PSIs, or public records.

Most significantly, the sealed file contained Smith's 2005 psychosexual evaluation, conducted solely for the Board's consideration in deciding whether to designate him as a VSP. The district court stated, "There is a copy of the psychosexual evaluation done in the statutory rape case," when describing the contents of the sealed file. There was no psychosexual evaluation prepared for use in Smith's sentencing for the statutory rape case. Rather, the only psychosexual evaluation in the record was that prepared in 2005, for the Board's consideration in determining whether Smith should be designated as a VSP upon release from incarceration.

Unlike a psychosexual evaluation prepared for a court's use in sentencing a sex offender under I.C. § 18-8316, the purpose of a psychosexual evaluation conducted under I.C. § 18-8317 is for "assessing [the offender's] risk of reoffense and to determine whether the offender should

11

be designated as a violent sexual predator" upon release from incarceration. Smith's 2005 psychosexual evaluation was conducted pursuant to I.C. § 18-8317 for the purpose of determining whether he should be listed as a VSP upon release from incarceration. This report was damaging to Smith, containing new diagnoses and test results suggesting that Smith represents a significant threat to reoffend. It is clear that this evaluation was important to the district court's decision to affirm the Board; it is also reasonable to infer that this evaluation also was significant to the Board in reaching its determination. Thus, the fact that it was never disclosed to the parties is significant.

The psychosexual evaluation was conducted by an Idaho Department of Corrections (IDOC) clinician who was exempt from psychosexual evaluator certification requirements. IDAPA 57.01.01.081. This evaluation: (1) presented Axis I and Axis II diagnoses not found in Smith's earlier psychological evaluations; (2) suggested that further evaluation was needed to exclude a new diagnosis of "Sexual Sadism;" (3) presented Minnesota Sex Offender Screening Tool, Revised (MnSOST-R) test results markedly higher than previous results; and (4) rejected observations contained in an earlier psychological evaluation. There is no mention of Smith's previous mental health treatment in the 2005 psychosexual evaluation. Without Smith or his counsel having the opportunity to respond to, much less review, the conclusions of the psychosexual evaluator, this Court and the district court are asked to accept, at face value, the damning conclusions of this evaluation. *See e.g.* Robert A. Prentky, et al., *Sexually Violent Predators in the Courtroom*, 12 Psychol. Pub. Pol'y & L. 357, 370 (2006) (questioning the admissibility of a psychological evaluation when the examiner cannot be examined or cross-examined about his/her methodology and diagnosis).

Smith also was not provided with the results of MnSOST-R tests administered by IDOC in April of 2000, September of 2003, and July of 2005. Regarding the MnSOST-R results, the district court made the following findings:

> *The record assembled and considered by the SOCB contains three important documents which have a direct bearing on the central issue, that being the degree of risk that Smith will reoffend sexually, or poses a true "threat of violence."* These documents are the score sheets for a diagnostic instrument known as the Minnesota Sex Offender Screening Tool, Revised ("MnSOST-R") administered to Smith by IDOC in April of 2000, September of 2003, and July of 2005. The reported scores on the MnSOST-R were:
>
> 2000……………10

12

2003……………12
2005…..…….…16

According to the April 30, 2000 *Psychological Report* contained in the SOCB file, Smith's score of 10 on the MnSOST-R should be analyzed as follows:

> This is a sixteen-item instrument used to measure the likelihood of a sex offender being violent and/or predatory in his sexual criminal activity.
>
> Smith scored ten on the instrument. The cut-off point is thirteen. This score could, in fact, be higher dependent upon the details of the sexual abuse he inflicted upon the five and nine year old males when he was 15 or 16 years of age respectively. If there were multiple acts, coercion, commission in a public place, and/or the victims were strangers, then conceivably the score could be higher than the cut-off score.
>
> According to the August 29, 2003 Psychological Evaluation considered by the SOCB, Smith's higher score of 12, should be understood as "reflecting that he is [sic] a high likelihood of reoffending."
>
> According to the September 21, 2005 Psychosexual Evaluation, "[o]n the MnSOST-R, Smith scored 16, indicating a maximum chance of sexual recidivism." The actual "assessment Detail Summary" describes the test result as "High – Refer for Commitment."
>
> The escalation of Smith's Scores on the MnSOST-R is particularly perplexing given [one of Smith's counselor's] claim that his anti-social behavior and attitudes (and hence, his risk of reoffense) had been in decline  . . . .

(emphasis added). As indicated in the emphasized language from the district court's opinion, the district court expressly identified Smith's MnSOST-R results as "important" in determining the "degree of risk that Smith will reoffend sexually." The significant range of score results raises issues that Smith had no opportunity to respond to because neither he nor his counsel ever saw the test results.

Smith's inability to view, much less challenge the accuracy of, the MnSOST-R results is troubling because much of the disparity in score results arises from a marked change in purportedly "historical / static variables." *See, e.g.*, Prentky, *supra*, at 357 (calling into question the efficacy and accuracy of mechanistic risk based assessment in sexually violent predator determinations particularly when different evaluators came to different conclusions). In 2000, these "static" variables contributed 8 points to Smith's score of 10. In 2005, the clinician who recommended Smith's VSP designation scored the same static variables at 13, thus significantly contributing to Smith's overall score of 16 and representing a maximal chance of sexual

13

recidivism. The discrepancy in scoring these supposedly objective static risk factors presents the obvious question of the accuracy of the assessment of Smith's risk of reoffending. In our view, Smith's lack of notice or opportunity to challenge these conclusions is more than problematic; it constitutes a due process violation.

Moreover, Smith was not afforded the opportunity to review confidential parole commission notes that were included in the sealed file. Even if Smith had requested to see these notes, the statute prohibits such review. I.C. § 18-8321(3)(c). These notes contain descriptions of Smith's behavior while incarcerated including numerous disciplinary reports for fighting and assaultive behavior. Although it is unknown whether the Board placed any weight on these documents, the district court clearly took note of the contents of these records in its decision; the district court's opinion refers to disciplinary matters not included in the summary of information provided to the parties.

The "notice" requirement of procedural due process gives meaning to "the opportunity to be heard." In order to have a meaningful opportunity to be heard, the offender must know what he is responding to. The district court's reliance on this information is significant because Smith simply could not meaningfully respond to, explain, or contest, factual representations of which he had no knowledge. For these reasons, we conclude that the proceedings before the district court did not satisfy Smith's right to procedural due process.

**C. Smith is entitled to present his claims of error in this appeal, as he has demonstrated that he received ineffective assistance of counsel.**

In closing argument, in response to a question from the court, Smith's attorney presented a number of challenges to the VSP statute and the guidelines under which the Board operated. The district court declined to address those claims, finding that Smith had "affirmatively waived any challenge to the constitutionality or validity of the statutes, regulations and/or guidelines." On appeal, the State has argued that Smith has failed to preserve these issues for appeal. In response, Smith asserts that he received ineffective assistance of counsel below. Although we conclude that Smith is entitled to present his challenges in this appeal due to the ineffective assistance of trial counsel, there are several preliminary matters we must address before we directly address this claim.

We must first determine whether Smith has a protected right to the effective assistance of counsel in an appeal from a board's designation as a VSP. Because such an appeal is civil in nature, there is no constitutional right to effective assistance of counsel. However, the legislature

14

has granted a statutory right to counsel, which gives Smith the statutory right to effective assistance of counsel. Notice of the Board's designation of an offender as a VSP includes a statement "[t]hat the offender has the right to retain counsel and that counsel will be provided by the court if the offender cannot afford counsel." I.C. § 18-8319(2)(d). "This statutory right to counsel would be a hollow right if it did not guarantee the defendant the right to effective assistance of counsel." *Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995). Thus, this Court has stated that there is no "legitimate basis for determining whether there has been a violation of the right to effective assistance of counsel guaranteed by I.C. § 19-852 differently from determining whether there has been a violation of a similar constitutional right." *Hernandez*, 127 Idaho at 687, 905 P.2d at 88. Thus, we conclude that there is a statutory right to effective assistance of counsel in an appeal from the Board's designation of a petitioner as a VSP and that the appropriate analysis is by reference to the well-established standards governing such claims under the Sixth Amendment.

Whether a petitioner may raise an ineffective assistance of counsel claim for the first time before this Court in a case arising from judicial review of the Board's designation is an issue of first impression. This Court has recognized that a defendant may raise the issue of the effectiveness of counsel from a trial resulting in a criminal conviction, while cautioning that this course of action may result in application of the doctrine of res judicata. *Parrott v. State*, 117 Idaho 272, 274, 787 P.2d 258, 260 (1990) (stating that a defendant may appeal counsel's effectiveness at trial directly or in a post-conviction proceeding, but he may not do both). We recognize that a claim for ineffective assistance of counsel usually requires an evidentiary hearing, and resolution of such claims can be difficult for an appellate court examining a trial record in which counsel's performance was not at issue. *Carter v. State*, 108 Idaho 788, 791, 702 P.2d 826, 829 (1985) (citation omitted).

Smith's argument that he can bring an ineffective assistance of counsel claim for the first time on appeal rests on procedural policy grounds. If he cannot bring a claim for ineffective assistance of counsel for the first time on appeal from the district court's affirmation of the Board's designation, then there is no procedural vehicle for this claim. Because there do not appear to be any other procedural grounds for the relief Smith seeks and because we believe that the record on appeal is sufficient to determine whether his claims have merit, we will consider Smith's claims of ineffective assistance of counsel in this appeal.

15

We note here that Smith's ineffective assistance of counsel claims have opened up for review issues which might otherwise be foreclosed. We have already discussed the general constitutional infirmity of the VSP statutory scheme and examined how it infected the district court proceedings. The district court found that Smith waived these challenges by failing to raise them prior to closing arguments at the evidentiary hearing.[11] Similarly, the state urges that Smith's objection to the lack of due process at the district court is not reviewable because the district court was never in a position to make an adverse ruling on that issue, and an adverse ruling is necessary to this Court's review. *State v. Fisher*, 123 Idaho 481, 485, 849 P.2d 942, 946 (1993) (citing *Dunclick, Inc. v. Utah-Idaho Concrete Pipe Co.*, 77 Idaho 499, 502, 295 P.2d 700, 702 (1956)). Nevertheless, we find these issues are appropriate for review in the context of evaluating the performance of Smith's counsel. Assuming without deciding that Smith's counsel waived any objection to the constitutionality of the VSP designation process, we may examine whether such a waiver amounts to ineffective assistance of counsel. Likewise, we consider whether the absence of adverse rulings by the district court was the result of ineffective assistance of Smith's counsel. In the course of answering these questions, review of the underlying constitutional issues becomes appropriate and necessary. Thus, keeping in mind the constitutional implications of the statutory scheme and the district court's review process, we turn now to the performance of Smith's counsel.

In order to successfully advance a claim of ineffective assistance of counsel, Smith must show (1) counsel's performance was deficient; and (2) that deficient performance resulted in prejudice. *Workman v. State,* 144 Idaho 518, 525, 164 P.3d 798, 805 (2007) (citing *Strickland v.*

---

[11] The district court correctly observes that constitutional rights, including due process rights, may be waived if such waiver is affirmatively demonstrated. *Glengary-Gamlin Protective Ass'n, Inc. v. Bird*, 106 Idaho 84, 90, 675 P.2d 344, 350 (Ct. App. 1983). This Court has often stated that "[w]aiver is a voluntary, intentional relinquishment of a known right or advantage." *See e.g. Frontier Federal Sav. & Loan Ass'n v. Douglass*, 123 Idaho 808, 812, 853 P.2d 553, 557 (1993) (quoting *Tiffany v. City of Payette*, 121 Idaho 396, 403, 825 P.2d 493, 500 (1992) (in turn quoting *Brand S Corp. v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981))). As a corollary to this definition of waiver, this Court has repeatedly stated that there is a presumption against waiver of fundamental constitutional rights. *See e.g. State v. Stevens,* 126 Idaho 822, 828, 892 P.2d 889, 895 (1995); *State v. Bainbridge*, 108 Idaho 273, 276, 698 P.2d 335, 338 (1985); *State v. Werneth*, 101 Idaho 241, 243, 611 P.2d 1026, 1028 (1980) (citing *State v. Fisk,* 92 Idaho 675, 448 P.2d 768 (1968)); *Abercrombie v. State*, 91 Idaho 586, 428 P.2d 505 (1967). Given that Smith's petition for judicial review claimed "the Due Process protections of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article One, Section Thirteen of the Idaho State Constitution" and that Smith's attorney attempted to present a constitutional challenge to the Act, albeit belatedly, we decline to conclude that the record affirmatively demonstrates Smith's "voluntarily, intentional relinquishment" of his challenge to the Act on due process grounds.

*Washington*, 466 U.S. 668, 687 (1984)).  Deficient performance is when counsel's behavior falls below an objective standard of reasonableness.  *Id.*  (citing *Strickland*, 466 U.S. at 687).  There is a strong presumption that counsel's performance is within the range of reasonable professional assistance, and the petitioner bears the burden of proving counsel's ineffectiveness.  *Ray v. State*, 133 Idaho 96, 102, 982 P.2d 931, 937 (1999) (citing *Strickland*, 466 U.S. at 689).  In proceedings where even a fully competent lawyer could not be effective, a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.  *United States v. Cronic*, 466 U.S. at 648, 659-60 (1984).

Smith asserts that he received ineffective assistance of counsel on four grounds:  (1) failure to assert the claim that he was denied due process before the Board in the VSP designation process; (2) failure to challenge the Board's failure to adopt and apply objective criteria for the designation of VSPs; (3) failure to advance due process claims regarding the district court's review and failure to review the evidence before the district court; and (4) failure to advance claims that his VSP designation violated his right not to be subject to an *ex post facto* law and double jeopardy.  We believe that these claims merit individual treatment and conclude that Smith has demonstrated ineffective assistance on the first three grounds.

    1.  Smith was prejudiced by his counsel's failure to timely assert Smith's claim that he was denied due process in the VSP designation process.

The record demonstrates that counsel attempted to raise, before the district court, the issue of whether Smith was denied due process in the VSP designation process.  In response to questioning from the district court, she stated:

> And we do not believe that some of the manners in which this statute has been set up provide for that.  In particular, the hearing before the Sexual Offender Classification Board, I think, has some due process issues as well in that the person is not allowed to be present, the information that is presented to the board is not made, required to be made known to the person who is being evaluated . . . .

Because the district court found that trial counsel waived this claim based upon the time at which this argument was presented, we find deficient performance by trial counsel.  There is simply no basis for concluding that there were strategic or tactical considerations that drove the timing decision; rather, the failure to raise this issue at an earlier time can only be attributed to inadvertence or neglect.  The failure to timely present this challenge falls below an objective standard of reasonableness.

17

The statutory scheme violates the offender's procedural due process rights when he is denied meaningful notice and an opportunity to be heard before designation as a VSP, as explained in Part II(A)(2) of this opinion, *supra*. We conclude that Smith's trial counsel's failure to timely raise this issue resulted in the district court's finding that the issue was waived. Thus, we conclude that Smith has demonstrated prejudice resulting from trial counsel's deficient performance.

Although the dissent concludes that Smith's due process challenge was waived and therefore is not properly before this Court on appeal, we conclude that we may address this issue on direct appeal because Smith was denied his statutory right to effective assistance of counsel below.

2. <u>Smith was prejudiced by his counsel's deficient performance in failing to timely assert a challenge to the Board's failure to adopt and apply objective criteria for VSP designation.</u>

The legislature created the Board to "assess the risk of reoffense of any offender convicted and incarcerated for commission of a crime as set forth in section 18-8314, Idaho Code, to determine whether the offender should be designated a violent sexual predator." I.C. § 18-8312(1). The legislature imposed the duty upon the Board to establish objective guidelines to be used in the determination of whether an offender should be designated a VSP:

> The board shall establish guidelines to determine whether an offender who meets the criteria of this section is a violent sexual predator presenting a high risk of reoffense. The guidelines shall be established with the assistance of sexual offender treatment and law enforcement professionals who have, by education, experience or training, expertise in the assessment and treatment of sexual offenders.
>
> (a) Factors to be used in establishment of the guidelines must be supported in the sexual offender assessment field as criteria reasonably related to the risk of reoffense and be objective criteria that can be gathered in a consistent and reliable manner.
>
> (b) The guidelines shall include, but are not limited to, the following general categories for risk assessment: seriousness of the offense, offense history, whether the offense was predatory, characteristics of the offender, characteristics of the victim, the relationship of the offender to the victim, the number of victims and the number of violations of each victim.

I.C. § 18-8314(5). Further, the legislature authorized the Board to promulgate rules to carry out the provisions of the Act. I.C. § 18-8314(8).

18

Smith's attorney appears to have made at least a minimal effort to challenge the Board's failure to implement a set of objective guidelines for VSP designations. As early as the first hearing, Smith's attorney asserted "[t]hus far I have challenged the implementation of the statute." In the argument that the district court deemed untimely, she expanded on this claim:

> Further, we would note that my client is also deprived of due process by the failure to apply, or the failure to set forth, first of all, the guidelines contained or as required by 18-8314 of the Idaho Code, that 18-8303 also of the Idaho Code and 57.01.01 subsection (15) of the IDAPA rules, that in failing to specify in these guidelines exactly what standards apply, first of all, in defining what constitutes a violent sexual offender for purposes of status; and, secondly, by failing to set forth adequate guidelines as to how this determination may be arrived at.
> In other words, we are contending that the quote, unquote guidelines which have been issued supposedly in response to the statute are not adequate to set forth what guides a Sexual Offender Classification Board in arriving at this determination.

As with the preceding claim, the district court determined that this claim was waived due to its untimely presentation. In the absence of any conceivable strategic or tactical reason for the delayed presentation of this claim, we find that trial counsel's performance was deficient.

We also find that this deficient performance resulted in prejudice to Smith. First, the district court clearly viewed this issue as significant, indicating that but for the waiver due to timeliness, this argument would have been persuasive. The district court stated that it had "serious reservations concerning the constitutional validity" of the designation process, observing:

> [T]he highly subjective nature of a determination based largely upon the SOCB's "experience, technical competence, and specialized knowledge," IDAPA 57.01.01.170.01.c, given that the SOR Act requires the guidelines used by the SOCB be *objective* criteria that can be gathered in a consistent and reliable manner, including the specific factors listed in the statute. Idaho Code § 18-8314(5)(1) – (b). The actual guidelines adopted by the SOCB do not even mention the nine "general categories for risk assessment" listed in the statute.

(emphasis added).

This Court has previously stated that judicial review is turned into a superfluous exercise of rubberstamping when the decision of a state board sitting in a disciplinary or quasi-judicial position relies on the "expertise," "experience," and "collective knowledge" of its members on an "ad hoc basis" rather than declaring and applying clearly articulated standards to the cases before it. *H & V Eng'g, Inc. v. Idaho State Bd. of Prof. Eng'rs & Land Surveyors*, 113 Idaho

646, 650, 747 P.2d 55, 59 (1988); *Tuma v. Bd. of Nursing*, 100 Idaho 74, 81, 593 P.2d 711, 718 (1979). In *Tuma*, we rejected the Board of Nursing's argument that it need not further define "unprofessional conduct" when disciplining a registered nurse. 100 Idaho at 79, 593 P.2d at 716. The Board of Nursing unsuccessfully argued that providing a definition was unnecessary since that board was composed of experts who were fit and capable in their own right to determine the standards of their profession from their personnel knowledge and experience. *Id*. at 81, 593 P.2d at 718. In *H & V*, we similarly rejected the Board of Engineers' reliance on the knowledge and expertise of its members in rendering a disciplinary decision on what constituted professional "misconduct" in the absence of a clearly defined standards. 113 Idaho at 650, 747 P.2d at 59. Both of these cases noted the due process ramifications implicit in a board's failure to avail itself of the opportunity to expand upon the legislative grounds under which its determinations are based. *H & V*, 113 Idaho at 651, 747 P.2d at 60; *Tuma*, 100 Idaho at 79, 593 P.2d at 716. This is because reliance on "the phantom of unknown standards" robs the opportunity for notice. *H & V*, 113 Idaho at 651, 747 P.2d at 60.

We find the instant case to be analogous to *Tuma* and *H & V* and conclude that, in the absence of objective[12] and clearly defined guidelines and standards upon which Smith's VSP designation may be evaluated, his due process rights could not be protected by the process of judicial review. Consequently, Smith's counsel's deficient performance in failing to timely raise this challenge below resulted in prejudice to Smith. As was the case with Smith's due process claim, we conclude that we may address this issue on direct appeal because Smith was denied his statutory right to effective assistance of counsel below.

    3. <u>Smith's counsel's failure to assert due process claims regarding the district court's review, including the right to review the information considered by the district court, constituted ineffective assistance of counsel.</u>

---

[12] The subjective nature of the Guidelines of the Sex Offender Classification Board (Guidelines) in effect at the time of the Board's consideration of Smith's case are readily apparent. The Guidelines defined "Violent Sexual Predator" as follows:

> A person who has been convicted of an offense listed in Section 18-8312, Idaho Code, and *who suffers from a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses*.

Guidelines 003.09 (emphasis added).

   In spite of the foregoing, the Guidelines expressly authorize the Board to disregard that definition when designating an offender as a VSP: "The Board may designate an offender as a violent sexual predator with or *without a finding of a mental abnormality or personality disorder*." Guidelines 007.02.b (emphasis added).

20

On appeal, Smith asserts that trial counsel was ineffective for failing to properly preserve Smith's due process challenge to the judicial review process, including Smith's right to review the sealed file. Smith's trial counsel asserted that the proceedings before the district court violated his due process rights:

> The procedure by which this review is supposed to take place is not one that even facially provides adequate due process if you follow the sequence that's set forth in the statute. I think that this court and counsel for the state have endeavored to inject due process into these proceedings and we are very grateful for that, but I think that the statute itself is challengeable as not providing for either adequate notice or for a meaningful hearing which is required under the constitutional provisions which I have just cited earlier.

The district court concluded that this challenge was not timely raised. As with the two preceding claims, we conclude that the absence of identifiable strategic or tactical considerations which might explain the timing of this belated challenge demonstrates that trial counsel provided deficient performance.

The district court identified the nature of prejudice resulting from the denial of access to the information upon which the Board relied, indicating that its "serious reservations concerning the validity of the review process" were, in part, based upon "the lack of information provided to the parties concerning the basis for the SOCB's designation." For the reasons stated in Part II(A)(2) of this opinion, we believe that the statutory denial of access to the information which the district court utilizes in making its decision deprives the offender of meaningful notice of that which he is attempting to challenge and consequently, it deprives the offender of any meaningful opportunity to be heard.

As discussed in Part II(B) of this opinion, the sealed file contained information that the district court found to be significant and to which Smith's attorney was not privy. We are unable to conclude that Smith has been appropriately evaluated as presenting a risk of reoffending without affording Smith the opportunity to defend his case on the merits with knowledge of that to which he is responding. "It is significant that most of the provisions of the Bill of Rights are procedural, for it is procedure that marks much of the difference between rule by law and rule by fiat." *Constantineau*, 400 U.S. at 436. Trial counsel's failure to assert due process challenges before the district court, including seeking access to the contents of the sealed file, resulted in prejudice to Smith.

4. <u>Smith was not prejudiced by his counsel's failure to advance the arguments that his VSP designation violated his right not to be subject to an *ex post facto* law or double jeopardy, or both.</u>

On appeal Smith asserts that he was prejudiced by his counsel's failure to advance the arguments that his VSP designation violated his right not to be subject to an *ex post facto* law or double jeopardy, or both. Smith argues that the VSP designation imposes an additional punishment upon him for a crime for which he had already been punished. This argument is without merit.

In *Kansas v. Hendricks*, 521 U.S. 346 (1997), the U.S. Supreme Court considered the constitutionality of involuntary commitment of individuals determined to be "sexually violent predators" under the Kansas Sexually Violent Predator Act. As expressed by the Kansas legislature, the purpose of the act was to address the risk sexually violent predators pose to society. *Id*. at 351. "As a result, the [Kansas] legislature found it necessary to establish 'a civil commitment procedure for the long term care and treatment of the sexually violent predator.'" *Id*. at 351-52. The Supreme Court found Kansas's sexually violent predator commitment proceedings to be non-punitive and civil in nature, thus precluding a finding of any double jeopardy or *ex post facto* violation. *Id*. at 369. There the Court stated:

> Although we recognize that a civil label is not always dispositive, we will reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it "civil." In those limited circumstances, we will consider the statute to have established criminal proceedings for constitutional purposes.

*Id*. at 361 (citations omitted) (quotations omitted).

Idaho's SOR Act states that "[j]udicial review of an offender's challenge as a violent sexual predator is civil, not criminal, and remedial, not adversarial." I.C. 18-8321(1). Declaring the purpose of Idaho's SOR Act, the legislature made the following findings:

> The legislature finds that sexual offenders present a significant risk of reoffense and that efforts of law enforcement agencies to protect their communities, conduct investigations and quickly apprehend offenders who commit sexual offenses are impaired by the lack of current information available about individuals who have been convicted of sexual offenses who live within their jurisdiction. *The legislature further finds that providing public access to certain information about convicted sexual offenders assists parents in the protection of their children. Such access further provides a means for organizations that work with youth or other vulnerable populations to prevent sexual offenders from threatening those*

22

*served by the organizations. Finally, public access assists the community in being observant of convicted sexual offenders in order to prevent them from recommitting sexual crimes.* Therefore, this state's policy is to assist efforts of local law enforcement agencies to protect communities by requiring sexual offenders to register with local law enforcement agencies and to make certain information about sexual offenders available to the public as provided in this chapter.

I.C. § 18-8302 (emphasis added).

These legislative findings evince the intention to protect the public through the dissemination of information. Unlike Kansas's act, Idaho's SOR Act does not require the confinement of those individuals designated as violent sexual predators. Rather, Idaho's act imposes additional registration requirements to enhance public awareness of the potential danger posed by certain offenders. Given the Supreme Court of the United States' determination that the involuntary commitment of individuals designated sexually violent predators is a non-punitive exercise of the state's valid police power, we have little difficulty in concluding that the imposition of additional registration requirements for offenders deemed VSPs in Idaho is also non-punitive.

This conclusion is consistent with previous rulings of this Court. "The purpose of Idaho's [sexual offender] registration statute is not punitive but remedial . . . . [t]he fact of registration is not an additional punishment; it does not extend a sentence. Rather, registration provides an information system that assists in the protection of communities." *Ray*, 133 Idaho at 101, 982 P.2d at 935-36; *see also State v. Gragg*, 143 Idaho 74, 137 P.3d 461 (Ct. App. 2005) (concluding that "Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act, I.C. §§ 18-8301 *et seq.*, and its effects, are not punitive, and therefore, do not violate the *ex post facto* prohibition . . . .").

The failure to present a non-viable legal argument does not constitute deficient performance. Accordingly, we conclude that Smith's counsel's failure to present *ex post facto* and double jeopardy challenges was not deficient performance.

**D. We decline to reach Smith's claim of violation of his due process rights on appeal.**

Smith asserts that this Court's order denying him access to the sealed record on appeal violates his right to procedural due process. As we conclude that the proceedings before the Board and the district court violated Smith's right to procedural due process, this matter will be

23

remanded to the district court with direction to vacate Smith's designation as a VSP. In light of this conclusion, we need not address this claim.

### III. CONCLUSION

When information upon which the VSP designation is based is withheld from an offender it cannot be said that there is either notice or a meaningful opportunity to be heard. The procedures afforded by the statute must comport with constitutional standards of procedural due process.

> [F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . [s]ecrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.

*Goss v. Lopez*, 419 U.S. 565, 580 (1975) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170, 171-72 (1951) (Frankfurter, J., concurring)). As this Court has previously stated, a "'Kafkaesque chain of secrecy is not what the Due Process Clause contemplates.' *See* F. Kafka, THE TRIAL (1956)." *H & V*, 113 Idaho at 651, 747 P.2d at 60 (quoting *Ridge v. Police & Firefighters Retirement & Relief Bd.*, 511 A.2d 418, 425, n.11 (D.C. 1986)).

The statutory scheme for VSP designation is constitutionally infirm. The district court did not succeed in fashioning an *ad hoc* remedy to the invalid statute. Until Smith has the benefit of his constitutional right to notice and an opportunity to be heard, the State may not designate him as a VSP. Accordingly, we reverse the decision of the district court and remand this matter to the district court with direction to vacate Smith's designation as a VSP.

Justices BURDICK and J. JONES, **CONCUR**.

W. JONES, J., dissenting in Part II B

I respectfully dissent in the result, specifically Part II B of the majority Opinion. For that reason, I find it unnecessary to reach the constitutional issue discussed in Part II A.

**Smith failed to raise any constitutional challenges to the VSP statutes for the district court or this Court's consideration.**

Smith contends that this issue was properly preserved for appeal when counsel addressed the constitutionality of the statutes and regulations in closing arguments. I find that this issue

24

was not properly raised below, and is therefore, not properly preserved for appeal. The district court found that Smith had improperly raised any constitutional challenges to the VSP statutes and regulations, by failing to raise them prior to closing arguments at the evidentiary hearing. That ruling was not in error. The trial court held that Smith had affirmatively waived his right to challenge the constitutionality and validity of the statutes by failing to raise the issue for argument or briefing.

Constitutional rights, including the right to due process, may be waived if such waiver is affirmatively demonstrated. *Glengary-Gamlin Protective Ass'n, Inc. v. Bird*, 106 Idaho 84, 90, 675 P.2d 344, 350 (Ct. App. 1983) (citations omitted). "The matter of directing and controlling the trial of a cause, including the arguments of counsel, to a great extent lies with the sound discretion of the presiding trial judge." *Kerby v. Oregon Short Line R. Co.*, 45 Idaho 636, 651, 264 P. 377, 381 (1928). The trial court, on several occasions asked Smith's counsel directly if she had the information necessary to conduct an evidentiary hearing contesting the Board's designation. On every occasion, Smith's counsel answered in the affirmative. Additionally, the trial court asked Smith's counsel if she was making a challenge to the statutes on any constitutional grounds, either facially or as applied. Smith's counsel responded that at that time she had not made any challenges to the statute. It was not until closing arguments, in response to a question from the bench, that Smith's counsel entered into a diatribe of constitutional challenges to the statute and regulations, both facially and as applied to Smith. The trial court found these arguments to be untimely.[13] It is fundamental that this Court will not consider issues not raised in the court below and raised for the first time on appeal. This rule applies particularly to constitutional issues. See *Buffington v. Potlatch Corp.*, 125 Idaho 837, 875 P.2d 934 (1994); *West v. El Paso Products Co.*, 122 Idaho 133, 832 P.2d 306 (1992). It has been stated that

> Ordinarily the appellate court will not consider constitutional questions not raised in the court below. Also, it has been said that the rule that an issue cannot be raised for the first time on appeal applies with particular force to constitutional issues or a claim that a statute is unconstitutional. Furthermore, in order to

---

[13] The majority does not address Smith's failure to timely raise any constitutional challenges. I find that Smith's failure to timely raise any constitutional challenges prior to closing arguments waives any challenges to the statutory framework. It was within the discretion of the trial court to dictate the issues presented at trial and narrow the scope of counsel's presentation. The trial court did not act outside of the bounds of discretion when it held that Smith's counsel failed to timely raise this constitutional challenge. Whether an issue is untimely raised is within the discretion of the trial court. If the trial court exercises its discretion and does not address the issue, then that issue should not be addressed by this Court for the first time on appeal.

> preserve the issue for appellate review, the constitutional issue must not only have been presented to the trial court, but the trial court must have ruled thereon.

4 C.J.S. Appeal and Error § 300 (2008).

This Court has also stated that "[t]o raise an issue on appeal, the record must contain an adverse ruling to form the basis for assignment of error and this Court will not consider or review an issue raised for the first time on appeal." *Magnuson Properties Partnership v. City of Coeur d'Alene,* 138 Idaho 166, 170, 59 P.3d 971, 975 (2002). This Court has also stated that "[i]t is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error. Hence, issues not raised below but raised for the first time on appeal will not be considered or reviewed." *Whitted v. Canyon County Board of Commissioners,* 137 Idaho 118, 121, 44 P.3d 1173, 1176 (2002) (internal citation omitted). In the present case, Smith's counsel affirmatively stated that she was not making any constitutional challenge to the statute, either facially or as applied. Then in the final minutes of her closing argument made nothing more than a broad-sweeping statement that the statutory scheme for the SOCB was unconstitutional as a denial of "due process pursuant to Article 1, and § 13 . . . of the Idaho Constitution, and further under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, by failing to provide adequate notice and standards by which a person can be informed of consequences for their conduct." The constitutionality issue was never briefed by the parties or presented to the district court for consideration or decision and the State had no reasonable opportunity to counter any constitutional arguments. Indeed, there really were no constitutional *arguments*, since Smith's counsel did nothing more than recite various constitutional provisions; there was no explanation as to *how* these statutes allegedly violated the constitution or any authority to support such a proposition. Under such circumstances, the district court was entirely correct in ruling that the arguments were untimely and absent any argument, citation of authority, briefing or a decision by the district court on the constitutional issues, such issues are not preserved for appeal and review by this Court. Therefore, I respectfully dissent in the majority's conclusion.

The trial court did not err when it found that Smith had affirmatively waived all challenges on due process grounds to the statutes and regulations. Smith's haphazard constitutional challenge to the statute in closing arguments did not afford the state an opportunity to respond, nor did it provide the lower court with briefing on the matter. Smith improperly

raised this issue below, and the trial court did not err when it held the issue waived. I would affirm the lower court and find that this issue was not properly raised below and therefore, the issue is not preserved for appeal to this Court.

**Smith was not denied due process of law when the district court reviewed the Board's determination of the VSP classification**.

Smith argues that the procedures employed by the Board, where all records are sealed and not subject to review by counsel, violates his due process rights. I fully agree with the majority that the constitutionality of this statutory scheme is questionable. However, I cannot agree that Smith was denied due process of law. At all relevant times during proceedings at the district court level, Smith was given all access to any information that he requested. The State correctly asserts that this issue is not subject to appellate review because there was no adverse ruling below. At no point did Smith request information which was in the sealed file, and at no point did the district court deny Smith access to the information which existed in the file. Each party was supplied with a detailed list of the documents that the Board relied on in making the classification that Smith was a VSP. Although neither party was supplied with a copy of the psychosexual evaluation, it was in the Board's file and available for review under the district court's offer.[14] When the district court asked counsel if they required any additional information, they both responded that they had the information necessary to proceed on the matter. At no point was Smith denied access to the information contained in the Board's file, nor did Smith request additional information that was not in his possession.[15] I cannot agree with the majority's finding that refuses to recognize the district court's offer at face value; an offer was made to allow the parties access to the file which neither party accepted. It is inappropriate to suggest that the district court would renege on its offer, and without an adverse ruling on the matter the majority engages in nothing more than a guessing game of what *would* have occurred

---

[14] As noted in the majority, the psychosexual evaluation is specifically listed by the district court as a document in the court's possession. Unlike the conclusion of the majority, I find no evidence to indicate that Smith's counsel was unaware that the psychosexual evaluation for the statutory rape case did not refer to the 2005 psychosexual evaluation prior to Smith's release on the statutory rape charges. The statutory scheme specifically requires a psychosexual evaluation upon release. Additionally, Smith's counsel conducted a lengthy examination of Smith about information revealed to the technician conducting the psychosexual evaluation in preparation for the classification board. Smith's counsel had knowledge that a psychosexual evaluation was conducted in 2005, and that the district court had a copy of the psychosexual evaluation in connection with the statutory rape case. I cannot agree with the majority that the district court inadvertently misled Smith's counsel as to what psychosexual evaluation was in the sealed file.

[15] Further, at no point in time has Smith indicated or alleged that he was prepared to present any of the evidence contained in the file to refute the designation as a VSP.

at the district court level. I find this issue inappropriate for appellate review because there was no adverse ruling from the lower court.

Although I am sympathetic to the due process analysis made by the majority and I fully agree that the statutory scheme is questionable as to its constitutionality, I am also mindful that this case is not one which is appropriate for judicial review. The ultimate reality is that despite constitutional infirmities in the statutes, Smith was not affected or prejudiced by them because the district court did not apply them in his case. The majority questions whether the district court's offer constituted a willingness to disregard the nondisclosure provisions of the Act. However, even if such doubt exists, it does not create an adverse ruling from which this Court may affirmatively state that Smith was denied access to these materials. The district court's statements, at minimum, show a willingness to disclose. The key point being, Smith did not request disclosure. I cannot speculate how the district court would have reacted in light of such a request; therefore, it is inappropriate for this Court to assume that despite the indicated willingness to disclose, the district court would have ultimately refused disclosure.

For the foregoing reasons, I would affirm the decision of the district court.

Chief Justice EISMANN CONCURS in the dissent.