# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38528/38704

ERICK VIRGIL HALL,                    )
                                      )     Boise, August 2013 Term
        Petitioner,                   )
                                      )     2013 Opinion No.  128
v.                                    )
                                      )     Filed:  December 2, 2013
STATE OF IDAHO,                       )
                                      )     Stephen Kenyon, Clerk
        Respondent.                   )

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Thomas F. Neville, District Judge.

The district court's order appointing Keith Roark as independent conflict counsel and ordering the State Appellate Public Defender to pay for Roark's services is <u>vacated</u>.

Sara B. Thomas, State Appellate Public Defender, Boise, for petitioner.  Ian Hall Thomson argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent.  LaMont Anderson argued.

---

HORTON, Justice.

This is a permissive appeal arising from two interlocutory orders entered by the district court in Erik Virgil Hall's case seeking post-conviction relief from his death sentence for the murder of Cheryl Hanlon, in which Hall alleges ineffective assistance of trial counsel.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hall has been convicted and sentenced to death twice. First, for kidnapping, murdering, and raping Lynn Henneman (Hall I) and, second, for the rape and murder of Cheryl Hanlon (Hall II). At the time Hall's petition for post-conviction relief was pending in Hall I, his trial in Hall II was underway. During the overlap of Hall I and Hall II, there were numerous communications between Hall's trial attorneys, Rob Chastain and Deborah Kristal, representing him in Hall II, and Mark Ackley and Paula Swensen from the State Appellate Public Defender's (SAPD) office, handling Hall's post-conviction proceedings in Hall I. It is the communications between Ackley, Swensen, and Hall's trial counsel that forms the basis for a potential conflict of interest in this

1

case, given that Hall alleges ineffective assistance of trial counsel in his second petition for post-conviction relief. [1]

On February 14, 2008, Hall filed a petition for post-conviction relief under I.C. §§ 19-2719 and 19-4901 in connection with his Hall II conviction. On June 29, 2010, the SAPD, Hall's post-conviction counsel, filed an Ex Parte Notice of Possible Conflict of Interest with the district court.

The Ex Parte Notice stated that the SAPD had "cooperated with trial counsel in Hall II by sharing testing and expert information obtained in Hall I." Additionally, the Ex Parte Notice stated "[a]fter an internal review, it was determined that independent counsel should be hired to independently evaluate the conflict. Dennis Benjamin has been contacted and has agreed to evaluate the conflict and advise Mr. Hall whether or not the conflict should be waived."

With no knowledge of the SAPD's Ex Parte Notice, the State filed a Motion for Inquiry into Possible SAPD Conflict on July 30, 2010. The district court heard oral argument on the State's Motion on August 26, 2010. At the hearing, the court requested that the SAPD supplement its original Ex Parte Notice to include a more detailed factual basis of the SAPD's possible conflict. In response, the SAPD filed an amended Ex Parte Notice on August 30, 2010.

The Affidavit of Dennis Benjamin was filed with the district court on August 30, 2010. Benjamin's affidavit provides, "I have been hired by the [SAPD] to determine whether they have a conflict of interest in representing Erick Hall and to advise Mr. Hall of my findings. In this matter, my client is Mr. Hall." Benjamin concluded that the contacts between the SAPD and Hall's trial counsel did not create a conflict of interest. Benjamin stated, "While it is clear that the lawyers communicated with one another about Mr. Hall and shared case related information, all four lawyers and investigators state that the SAPD did not give trial counsel advice on how to proceed in Hall II."

Although Benjamin conducted an extensive inquiry into whether the SAPD was conflicted, the district court did not question Benjamin about his findings. Rather, the court believed that Benjamin was too closely aligned with the SAPD to be truly independent, stating that "[a]lthough the court holds Mr. Benjamin in high regard, he is not the Court's choice of

---

[1] Neither Ackley nor Swensen were employed by the SAPD when the district court learned of the potential conflict of interest in this case. Ackley left the SAPD's office in April of 2010, and Swensen left the SAPD's office in July of 2008.

independent counsel and would not have been this Court's choice of independent counsel had the SAPD consulted with the Court before choosing him."[2]

On December 27, 2010, the district court issued its Memorandum Decision and Order Appointing Keith Roark as Independent Counsel (First Memorandum Decision). The court's First Memorandum Decision provides:

> This Court's first duty is to determine whether a conflict exists, and the Court is presently lacking enough facts to make that determination. Having considered a number of ways to structure the inquiry, and being mindful of the attorney-client privilege issues in this case, the Court hereby appoints R. Keith Roark as independent conflict counsel …. Mr. Roark will represent the Petitioner and shall conduct an inquiry into whether a conflict exists. As part of this appointment, the Court authorizes Mr. Roark to conduct a thorough and searching review of the SAPD's pre-trial, trial and pre-sentence involvement in the trial of Hall II up to its appointment to represent the Petitioner in this Hall II post-conviction and appeal.

The district court also held that "the cost of independent conflict counsel appointed by the Court shall be borne by the SAPD."

On January 10, 2011, the SAPD filed a Motion to Reconsider Memorandum Decision. The district court denied the motion and issued its Memorandum Decision and Order Denying the Motion to Reconsider; and Supplementing the Original Decision and Order (Second Memorandum Decision) on February 23, 2011.

On February 11, 2011, Hall filed a motion for permission to appeal the district court's First Memorandum Decision under I.A.R. 12. The district court denied Hall's motion seeking permissive appeal. However, on March 23, 2011, this Court granted Hall's motion seeking permissive appeal under I.A.R. 12. Subsequently, on March 29, 2011, Hall requested permission to appeal the district court's Second Memorandum Decision, which this Court also granted. On April 20, 2011, this Court consolidated both of Hall's permissive appeals.

## II. STANDARD OF REVIEW

"Constitutional issues and the construction and application of legislative acts are pure questions of law over which this Court exercises free review." *State v. Statton*, 136 Idaho 135, 136, 30 P.3d 290, 291 (2001). The adequacy of the inquiry into a conflict of interest is a constitutional issue over which this Court exercises free review. *Id.* Additionally, this Court

---

[2] The district court did not approve of Benjamin as independent conflict counsel because he "was chosen by the same office that is potentially conflicted in this matter, and did not have the authority to depose. [Also,] he is closely aligned with the SAPD in that he regularly acts as conflict counsel for the SAPD and therefore, a portion of his income is dependent to some degree upon his relationship with that office."

3

exercises "free review over matters of statutory interpretation." *KGF Dev., LLC v. City of Ketchum*, 149 Idaho 524, 527, 236 P.3d 1284, 1287 (2010). Furthermore, due to the "unusual posture" of cases heard on permissive appeal, this Court "is constrained to rule narrowly" and address only the precise questions that were framed by the motion seeking permissive appeal and granted by the Court. *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009) (quoting *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989)).

## III. ANALYSIS

### A. Petitioners seeking post-conviction relief from a death sentence have a statutory right to conflict-free counsel.

An issue of first impression is presented in this case; whether a petitioner sentenced to death has a statutory right to conflict free counsel.

In the district court's First Memorandum Decision the court stated:

> Every defendant has the right to be represented by conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 272–73 [(1981)]. In order to ensure that a defendant receives conflict-free counsel, a trial court has an affirmative duty to inquire into a potential conflict whenever it "knows or reasonably should know that a particular conflict may exist." *State v. Lovelace*, 140 Idaho 53, 60, 90 P.3d 278, 285 (2003).

By citing the standards from *Wood* and *Lovelace*, the district court implicitly applied the Sixth Amendment's guarantee of conflict-free counsel to Hall's post-conviction proceeding. However, petitioners seeking post-conviction relief do not have a constitutional right to conflict free counsel. Recognizing this, on appeal, both the State and Hall argue that this Court should extend a statutory right to conflict-free counsel, premised on this Court's Six Amendment framework of analysis, for petitioners seeking post-conviction relief from a death sentence. We agree.

"In all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "The right to counsel guaranteed by the Sixth Amendment is a fundamental right." *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980). The Sixth Amendment has been incorporated through the Due Process Clause of the Fourteenth Amendment to apply to the states. *See Powell v. Alabama*, 287 U.S. 45, 73 (1932). Idaho law also guarantees a criminal defendant's right to counsel in all criminal prosecutions. Idaho Const. art. I, § 13; *State v. Severson*, 147 Idaho 694, 703, 215 P.3d 414, 423 n.7 (2009).

The Sixth Amendment "has been interpreted to include the right to be represented by conflict-free counsel." *Id.* (citing *Wood*, 450 U.S. at 271); *see also Rethinking the Boundaries of the Sixth Amendment Right to Choice of Counsel*, 124 Harv. L. Rev. 1550, 1552 (2011) ("The

4

Sixth Amendment right to counsel has been interpreted as a right to conflict-free counsel."). "In order to ensure that a defendant receives conflict-free counsel, a trial court has an affirmative duty to inquire into a potential conflict whenever it knows or 'reasonably should know that a particular conflict may exist.'" *Severson*, 147 Idaho at 703, 215 P.3d at 423 (quoting *State v. Lovelace*, 140 Idaho 53, 60, 90 P.3d 278, 285 (2003)).

However, "[t]he right to counsel in post-conviction proceedings is not a constitutional right." *Lovelace*, 140 Idaho at 71, 90 P.3d at 296; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions … and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."). Furthermore, "[a] petition for post-conviction relief is a civil proceeding" not a criminal prosecution triggering the Sixth Amendment. *Stuart v. State*, 136 Idaho 490, 494, 36 P.3d 1278, 1282 (2001). Thus, the Sixth Amendment itself does not provide a petitioner seeking post-conviction review with the right to conflict-free counsel.

Although the Sixth Amendment's right to conflict-free counsel does not extend to post-conviction proceedings, "I.C.R. 44.2 provides for the mandatory appointment of counsel for post-conviction review after the imposition of the death penalty." *Lovelace*, 140 Idaho at 71, 90 P.3d at 296. Idaho Criminal Rule 44.2 provides:

> Immediately following the imposition of the death penalty, the district judge who sentenced the defendant *shall appoint at least one attorney to represent the defendant for the purpose of seeking any post-conviction remedy* referred to in I.C. § 19-2719(4) that the defendant may choose to seek. This appointment shall be made in compliance with the standards set forth in Idaho Criminal Rule 44.3.

I.C.R. 44.2(1) (emphasis added). Accordingly, post-conviction petitioners sentenced to death have a statutory right to counsel when seeking a remedy referred to in I.C. § 19-2719(4). Thus, the issue becomes whether I.C.R 44.2(1) grants post-conviction petitioners sentenced to death the right to have conflict-free counsel. We hold it does.

This court has previously found that the statutory right to counsel provided to criminal defendants in proceedings other than a direct appeal carried with it the correlative right to effective assistance of counsel. Accordingly, we subsequently analyzed counsel's effectiveness

utilizing a Sixth Amendment framework. *See Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995); *Smith v. State*, 146 Idaho 822, 834, 203 P.3d 1221, 1233 (2009).

In *Hernandez*, the defendant was convicted of three counts of delivering a controlled substance. 127 Idaho at 686, 905 P.2d at 87. He appealed and the Idaho Court of Appeals upheld his convictions. *Id*. Following the Court of Appeals' decision, Hernandez's attorney did not file a petition for review with this Court. *Id*. Subsequently, Hernandez filed a pro se petition for post-conviction relief on the ground that he had been denied effective assistance of counsel because his counsel failed to petition this Court for review. *Id*. On appeal to this Court, Hernandez invoked the terms of I.C. § 19-852 as the basis for his right to effective assistance of counsel. *Id*. at 687, 905 P.2d at 88. We concluded that I.C. § 19-852 "provides that a needy defendant has a right to appointed counsel in any appeal," which included "the right to counsel in filing a petition to this Court requesting review of a Court of Appeals decision." *Id*. The Court was careful to make it clear that Hernandez's right to counsel was rooted in I.C. § 19-852 and not under the federal or state constitution. *Id*. Despite holding that the right to counsel was purely statutory, we analogized the right to our prior cases involving constitutional protections, stating:

> This statutory right to counsel would be a hollow right if it did not guarantee the defendant the right to effective assistance of counsel. Therefore, *we look to cases where the Court has discussed the manner of proving ineffective assistance of counsel, even though the basis for the right in those cases was constitutional, not statutory*. We can see no legitimate basis for determining whether there has been a violation of the right to effective assistance of counsel guaranteed by I.C. § 19-852 differently from determining whether there has been a violation of a similar constitutional right.

*Id*. (emphasis added).

This Court took a similar position in *Smith*. After Smith was convicted of rape, the Sexual Offender Classification Board classified him as a violent sexual predator. 146 Idaho at 824, 203 P.3d at 1223. Smith sought judicial review of that decision. *Id*. After conducting an evidentiary hearing, the district court upheld the Board's decision and Smith appealed to this Court. *Id*. On appeal, one of Smith's claims was that he received ineffective assistance of counsel below. *Id*. at 833, 203 P.3d at 1232. The issue, as this Court framed it, was "whether Smith has a protected right to the effective assistance of counsel in an appeal from a board's designation as a [Violent Sexual Predator]." *Id*. Because Smith's appeal was civil in nature, the Court recognized that "there is no constitutional right to effective assistance of counsel." *Id*. However, the Court recognized that I.C. § 18–8319(2)(d), which stated "[t]hat the offender has the right to retain

counsel and that counsel will be provided by the court if the offender cannot afford counsel," provided Smith with a statutory right to counsel. *Id*. Relying on *Hernandez*, we stated:

> "This statutory right to counsel would be a hollow right if it did not guarantee the defendant the right to effective assistance of counsel." *Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995). Thus, this Court has stated that there is no "legitimate basis for determining whether there has been a violation of the right to effective assistance of counsel guaranteed by I.C. § 19-852 differently from determining whether there has been a violation of a similar constitutional right." *Hernandez*, 127 Idaho at 687, 905 P.2d at 88. Thus, we conclude that there is a statutory right to effective assistance of counsel in an appeal from the Board's designation of a petitioner as a [Violent Sexual Predator] and that the appropriate analysis is by reference to the well-established standards governing such claims under the Sixth Amendment.

*Smith*, 146 Idaho at 833–34, 203 P.3d 1232–33.

Neither *Hernandez* nor *Smith* are perfectly analogous here. Neither dealt specifically with post-conviction proceedings and both spoke directly to a petitioner's right to effective assistance of counsel as opposed to conflict-free counsel.[3] Nevertheless, when read together they provide strong authority that petitioners seeking post-conviction relief from a death sentence are entitled to conflict-free counsel under I.C.R. 44.2(1). Accordingly, the appropriate analysis to evaluate any alleged defects in the petitioner's right to counsel under I.C.R. 44.2(1) is through a Sixth Amendment framework. This will ensure that a petitioner's right to counsel under I.C.R. 44.2(1), as well as the corresponding right to conflict-free counsel, is not a hollow right.

Having concluded that I.C.R. 44.2(1) provides Hall, a petitioner seeking post-conviction relief from a death sentence, with a statutory right to conflict-free counsel, we now proceed to address the parties' argument in this permissive appeal.

**B. The district court erred in ordering Roark to conduct a conflict inquiry.**

In this case, the district court's appointment of Roark amounted to an unguided search for a possible conflict. We note at the outset that the Ex Parte Notice filed by the SAPD was not sufficient to trigger the district court's duty to inquire and that even if the Ex Parte Notice did disclose some facts indicating a possible conflict, that conflict could not currently be imputed to the SAPD as a whole because the communications were with former SAPD attorneys.

---

[3] However, "[t]he Supreme Court has held that a defendant's Sixth Amendment right to effective assistance of counsel includes a right to conflict-free representation." *C. Criminal Law and Procedure*, 116 HARV. L. REV. 242, 242 (2002).

## 1. The nature and scope of the district court's duty to inquire.

The district court held that Hall had a fundamental right to conflict-free counsel during his post-conviction proceedings. As a result, the district court believed that it had an affirmative duty to conduct an inquiry into whether Hall's counsel had a conflict of interest. Because the court had received notices of a possible conflict of interest, it granted the State's motion for inquiry and determined that an independent inquiry was warranted. Citing to *Lovelace*, 140 Idaho at 60, 90 P.3d at 285, the district court concluded it had "an affirmative duty to inquire into a potential conflict whenever it knows or reasonably should know that a particular conflict may exist." Furthermore, the district court perceived the inquiry as the court's responsibility stating:

> [T]he question of whether a conflict actually exists is for the court to decide and not for counsel. This court does not believe that its duty to conduct a thorough and searching inquiry would be satisfied in this case by simply accepting the opinions of counsel regarding whether a conflict exists without any disclosure of the factual bases for that opinion.

Because the court believed that it lacked sufficient information to determine whether a conflict existed,[4] it appointed Roark as independent conflict counsel. Under the court's order, Roark was to represent Hall but also report to the district court. As to Benjamin's inquiry, the court elected not to rely on his findings or representations.

On appeal, Hall acknowledges that the trial court has an affirmative duty to inquire into a potential conflict whenever it knows or reasonably should know that a particular conflict may exist. However, Hall argues that the cases relied on by the district court in finding that it had an affirmative duty to conduct a thorough and searching inquiry are distinguishable because the possibility of a conflict in this case was raised by Hall's counsel, not Hall himself. Additionally, Hall contends that Roark's conflict inquiry is unnecessary and duplicative because: (1) Benjamin assessed the possible conflict and concluded no conflict existed; and, (2) Benjamin made his conclusion after reviewing all relevant information. Lastly, Hall argues that the district court's second inquiry is unnecessary because the conduct of Hall's previous attorneys at the SAPD's office should not be imputed to Hall's current post-conviction counsel.

---

[4] The district court's First Memorandum Decision indicates that counsel for the SAPD was not cooperative with the court in determining whether a conflict existed. The court stated that is gave "both the SAPD and Mr. Benjamin several opportunities to come forward voluntarily with the details of the communications between the SAPD and Hall II trial counsel, in each instance, counsel has chosen not to voluntarily disclose the details of those communications."

Conversely, the State argues that the district court did not err in ordering Roark to conduct a second conflict inquiry. The State asserts that the SAPD's Ex Parte Notice, coupled with the heightened standards of review in capital cases, imposed a duty on the district court to affirmatively inquire into the possibility of a potential conflict of interest. Furthermore, the State argues that "the court's duty to conduct a 'thorough and searching inquiry' cannot be abrogated and given to an attorney retained by the very entity that may have precipitated the alleged conflict; it is the court's inquiry, not counsels' or someone chosen by counsel."

"Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused . . . . The trial court should protect the right of an accused to have the assistance of counsel." *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978) (quoting *Glasser v. United States*, 315 U.S. 60, 71 (1942)). As discussed above, the Sixth Amendment to the U.S. Constitution has been interpreted to include the right to be represented by conflict-free counsel. *Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."). "In order to ensure that a defendant receives conflict-free counsel, a trial court has an affirmative duty to inquire into a potential conflict whenever it knows or 'reasonably should know that a particular conflict may exist.'" *State v. Severson*, 147 Idaho 694, 703, 215 P.3d 414, 423 (2009) (quoting *Lovelace*, 140 Idaho at 60, 90 P.3d at 285). "In order to satisfy the inquiry requirement, a trial court's examination of the potential conflict must be thorough and searching and should be conducted on the record." *Id*. at 704, 215 P.3d at 424. In determining whether a conflict exists, a trial court may rely on the representations made by counsel, or may inquire further into the facts. *Id*. (citing *Kaplan v. United States*, 375 F.2d 895, 897 (9th Cir. 1967)).

### 2. The Ex Parte Notice did not trigger the district court's duty to inquire.

In this case, the SAPD's Ex Parte Notice alerted the district court of a "possible conflict of interest regarding the SAPD representing Hall in his post-conviction proceedings." According to the Ex Parte Notice, the potential conflict stemmed from sharing testing and expert information between *former* SAPD attorneys representing Hall in Hall I post-conviction proceedings and Hall's trial counsel in Hall II.

After receiving the Ex Parte Notice, the district court concluded that "it had reason to know that a particular conflict may exist." This was an error because the Ex Parte Notice was

9

insufficient to indicate the existence of a conflict and was also insufficient to trigger the district court's independent duty to inquire.

As the Supreme Court stated in *Mickens v. Taylor*, an inquiry is only required "when 'the trial court knows or reasonably should know that a particular conflict exists,' which is not to be confused with when the trial court is aware of a vague, unspecified possibility of conflict." 535 U.S. 162, 168–69 (2002) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980)). Both *Mickens* and *Cuyler* involved a possible conflict arising from defense counsel's representation of multiple co-defendants, a situation that is more likely to give rise to a conflict than the circumstances in this case. In *Cuyler*, the respondent was one of three defendants accused of murder who were tried separately but represented by the same counsel. In *Cuyler*, the Court noted that the separate trials "significantly reduced the potential for a divergence in [the co-defendants'] interests" and ultimately held that no "special circumstances" triggered the trial court's duty to inquire. *Cuyler*, 446 U.S. at 346.

Here, the district court repeatedly referred to the Ex Parte Notice as "vague" and indicated that it provided little to no information addressing the potential conflict. Accordingly, the Ex Parte Notice in this case only raised a "vague, unspecified possibility of conflict," which did not trigger the district court's duty to inquire.

Furthermore, even if the Ex Parte Notice contained sufficient facts to substantiate a possible conflict of interest, under the circumstances, the potential conflict could not presently be imputed to the SAPD as a whole. The potential conflicts of Ackley and Swensen could not be imputed to the SAPD's office as a whole because at the time the Ex Parte Notice was filed, neither attorney was currently employed by the SAPD. Thus, no attorney employed by the SAPD's office was currently conflicted, and accordingly it would be impossible to impute any conflict to the office as a whole.

We note that had the Ex Parte Notice been sufficient to trigger the district court's duty to inquire, the court would have the discretion to either rely on the representations of counsel or independently inquire into the facts.[5] *See Kaplan*, 375 F.2d at 897. However, in this case the

---

[5] Although a district court may rely on the representations of counsel or independently inquire into the potential conflict, such an inquiry "should be conducted on the record." *Severson*, 147 Idaho at 704, 215 P.3d at 424. That was not done in this case; instead, the court essentially employed Roark as a private investigator to conduct an inquiry *off the record*. This was another error in the district court's conflict inquiry.

10

district court's duty was not triggered, and thus its order appointing Roark to conduct a conflict inquiry must be vacated.

**C. The district court erred in ordering the SAPD to pay for Roark's services.**

Had the district court's independent conflict inquiry been warranted in this case, the district court would be responsible for Roark's fees because Roark was fulfilling the district court's duty to inquire.

After appointing Roark as independent conflict counsel, the district court ordered the SAPD to pay for Roark's services. The district court determined that the SAPD should pay for Roark's services because: (1) the potential conflict was a direct result of the SAPD's conduct; (2) appointment of Roark may not have been necessary had the SAPD been more forthcoming with the factual basis for the potential conflict; and, (3) the SAPD's appointed conflict counsel, Benjamin, was not independent and thus had not performed the same service that Roark was to perform. The district court relied on I.C. § 19-871 in ordering the SAPD to pay for Roark's services. Idaho Code § 19-871 provides:

> Should the state appellate public defender be unable to carry out the duties required in this act because of a conflict of interest or any other reason, the state appellate public defender shall arrange for counsel for indigent defendants to be compensated out of the budget of the state appellate public defender.

In relying on I.C. § 19-871, the court stated, "Idaho Code § 19-871 provides that when the SAPD is unable to carry out such duties because of a conflict of interest or any other reason, other counsel shall be 'compensated out of the budget of the state appellate public defender.'"

On appeal, Hall asserts that the district court's order that the SAPD pay for Roark's services amounts to unauthorized judicial oversight of a self-governing agency within the executive branch, the SAPD. Relying on I.C. § 19-870(3), Hall argues that "it is the exclusive power of the SAPD to decide who it will contract with to provide legal representation to indigent clients when the SAPD is unable to." Additionally, Hall argues that by ordering the SAPD to pay for Roark's services the district court violated the separation of powers doctrine set forth in Idaho Const., Art. II, §1. Furthermore, Hall argues that the district court erroneously relied on I.C. § 19-871 in ordering the SAPD to compensate Roark because: (1) no conflict has been identified in this case; and, (2) Roark was appointed by the district court to conduct its own inquiry and report back to the district court. Lastly, Hall argues that the terms of I.C. § 19-860(b) make Ada County responsible for Roark's services.

11

First, the State argues that because Hall did not raise his separation of powers argument before the district court, the argument is waived now on permissive appeal. Next, the State argues that Hall misunderstands the meaning of I.C. § 19-871. According to the State, I.C. § 19-871 only allows the SAPD to arrange for the compensation of conflict counsel, not the appointment. In sum, the State argues that the district court has authority over the appointment of capital post-conviction counsel and Hall has failed to show that appointing Roark violated the separation of powers doctrine.

### 1. Hall was not granted leave to raise his separation of powers argument, thus the Court will not consider it.

Under I.A.R. 12:

> Permission may be granted by the Supreme Court to appeal from an interlocutory order or judgment of a district court in a civil … action … which is not otherwise appealable under these rules, but which involves a controlling question of law as to which there is substantial grounds for difference of opinion and in which an immediate appeal from the order or decree may materially advance the orderly resolution of the litigation.

I.A.R. 12(a). The intent of I.A.R. 12 is to "provide an immediate appeal from an interlocutory order if substantial legal issues of great public interest or legal questions of first impression are involved." *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 789, 215 P.3d 505, 509 (2009) (quoting *Budell v. Todd*, 105 Idaho 2, 4, 665 P.2d 701, 703 (1983)). Appeals brought under I.A.R. 12 are poised in an "unusual posture." *Id.* (quoting *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989)). Due to the "unusual posture" of cases heard on permissive appeal, this Court "is constrained to rule narrowly" and address only the precise questions that were framed by the motion seeking permissive appeal and granted by the Court. *Id.*

On March 23, 2011, this Court granted Hall's first motion for permission to appeal. Specifically, the Court's order gave Hall permission to appeal "under I.A.R. 12 from the district court's [First Memorandum Decision]." After the district court entered its Second Memorandum Decision, Hall again motioned the Court for permission to appeal under I.A.R. 12 and to consolidate the appeals. On April 20, 2011, the Court granted Hall "leave to appeal by permission under I.A.R. 12 from the district court's [Second Memorandum Decision]." The Court then consolidated Hall's permissive appeals.

Based on the clear language of this Court's orders granting Hall permission to appeal under I.A.R. 12, and construing the issues narrowly, this Court will not address Hall's separation

12

of powers argument. We granted Hall leave to appeal the district court's two interlocutory orders. At no point in either of the district court's orders does it mention separation of powers or discuss the balance of power between the judiciary and the executive branch. As a result, the Court did not–and could not have–granted Hall leave to appeal the district court's order within a separation of powers framework because it was not raised or discussed by the district court below. Interlocutory appeals should not be used to guide the lower court on issues that have not yet been raised. Thus, this Court will not address whether the district court's order that the SAPD pay for Roark's services violated the separation of powers doctrine.

However, the district court did premise its order that the SAPD pay for Roark's services on the terms of I.C. § 19-871, which Hall claims the court misinterpreted. We agree.

**2. Idaho Code § 19-871 does not require the SAPD to pay for Roark's services.**

The district court found that I.C. § 19-871 "provides that counsel for indigent defendants shall be compensated out of the budget of the state appellate public defender when the state appellate public defender is unable to carry out its duties due to a conflict of interest or any other reason." Based on this interpretation, the district court concluded that the cost of independent conflict counsel should be borne by the SAPD.

Idaho Code § 19-871 provides:

> Should the state appellate public defender be unable to carry out the duties required in this act *because of a conflict of interest* or any other reason, the state appellate public defender shall arrange for counsel for indigent defendants to be compensated out of the budget of the state appellate public defender.

I.C. § 19-871 (emphasis added). "This Court freely reviews the interpretation of a statute and its application to the facts." *State v. Yzaguirre*, 144 Idaho 471, 474, 163 P.3d 1183, 1186 (2007).

> The objective of statutory interpretation is to give effect to legislative intent. Because the best guide to legislative intent is the words of the statute itself, the interpretation of a statute must begin with the literal words of the statute. Where the statutory language is unambiguous, the Court does not construe it but simply follows the law as written. The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary. . . . In determining its ordinary meaning effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.

*Id.* at 475, 163 P.3d at 1187 (internal citations and quotations omitted).

The plain language of I.C. § 19-871 indicates that the district court erred in relying on it as a basis for ordering the SAPD to pay for Roark's services. The statute clearly contemplates

13

that where the SAPD is conflicted out of a case it is obligated to "arrange for counsel for indigent defendants to be compensated out of the budget of the state appellate public defender." However, before the SAPD's obligation is triggered, a conflict must already be identified that prevents the SAPD from acting as counsel and the SAPD must arrange for counsel to carry out its duties. Accordingly, the existence of an actual conflict is a condition precedent to the SAPD's duty to arrange for and compensate conflict counsel.

In this case, no conflict has been found. Rather, the district court is merely engaged in the inquiry stage to determine if a conflict will prevent the SAPD from acting as Hall's counsel. Because no conflict has been identified, rendering the SAPD unable to carry out its representation of Hall, the SAPD's duty to arrange for and compensate conflict counsel under I.C. § 19-871 has not been triggered.

The district court further held that ordering the SAPD to pay for Roark's services was warranted because the potential conflict was a direct result of the SAPD's conduct and the appointment of Roark may not have been necessary had the SAPD been more forthcoming with the factual basis for the potential conflict. The court offered no support for these conclusions and the State offers no support on appeal indicating that the SAPD's conduct somehow justifies saddling the SAPD with Roark's fees for performing a conflict inquiry in order to inform the district court as to whether a conflict exists. Accordingly, we vacate the district court's order that the SAPD pay for Roark's services.

### 3. Idaho Code § 19-860(2) does not make Ada County responsible for the cost of Roark's services.

In Hall's motion for reconsideration, he argued that because the district court selected an attorney other than the SAPD to represent Hall, Ada County is responsible for the costs of Roark's services under I.C. § 19-860(b). The district court concluded that the SAPD's reliance on I.C. § 19-860(b) was misplaced because it only applied to county public defenders being replaced in circumstances where an indigent defendant was facing formal charges.

Idaho Code § 19-860(2)[6] provides:

If a court *before whom a person appears upon a formal charge* assigns an attorney other than a public defender to represent an indigent person, the appropriate district court, upon application, shall prescribe a reasonable rate of

---

[6] Subsection (b) of I.C. § 19-860 was renumbered as (2) as of July 1, 2013. *See* 2013 Idaho Laws Ch. 220 (2013).

compensation for his services and shall determine the direct expenses necessary to representation for which he should be reimbursed. The county shall pay the attorney the amounts so prescribed. The attorney shall be compensated for his services with regard to the complexity of the issues, the time involved and other relevant considerations.

I.C. § 19-860(2) (emphasis added).

Based on the plain language of I.C. § 19-860(2), the statute's terms do not apply in this case because post-conviction review proceedings are viewed as a collateral attack upon a conviction already made and I.C. § 19-860(2) only applies where an indigent defendant is before a district court "upon a formal charge." *See* 39 Am. Jur. 2d Habeas Corpus § 9. Hall was not before the district court "upon a formal charge," and thus the fee provision for court appointed counsel in I.C. §19-860(2) is inapplicable to this case.

**D. The district court's order granting Roark access to the SAPD's client file on Hall violated Hall's attorney-client privilege.**

The district court's First Memorandum Decision stated "Roark will represent the Petitioner and shall conduct an inquiry into whether a conflict exists" and "advise Hall regarding a potential conflict and a waiver thereof." In order to conduct his inquiry, the district court authorized Roark to "conduct a thorough and searching review of the SAPD's pre-trial, trial and presentence involvement in the trial of Hall II up to [the SAPD's] appointment" in this case.

In addition to representing Hall, Roark was to present his findings to the district court, "keeping in mind the attorney client privilege issues involved in any intertwining of the Hall I and Hall II cases." Specifically, the district court requested that Roark submit a report detailing: "(1) whether a conflict exists; (2) if so, the general nature of the conflict; (3) the facts surrounding or underlying the conflict; and (4) whether independent counsel believes such a conflict may be imputed to the entire SAPD's office." On reconsideration, the district court clarified that "(1) Mr. Roark is authorized to view the files of the SAPD; and (2) anyone employed by or affiliated with the SAPD's office who is questioned or deposed by Mr. Roark during his investigation is acting pursuant to a lawful judicial inquiry and subject to a court order as contemplated by I.R.P.C. 1.6(b)(6)."

On appeal, Hall argues that the district court erred in ordering the disclosure of confidential and attorney-client privileged material. First, Hall contends that the district court conflated the attorney-client privilege and the rule of confidential communications. Hall then argues that the district court's order that Roark "conduct a thorough and searching review of the

15

SAPD's pre-trial, trial and pre-sentence involvement in the trial of Hall II up to its appointment in Hall II" is a clear breach of the attorney-client privilege. Furthermore, Hall argues that the district court's order leaves a great deal of uncertainty with regard to Roark's relationship with Hall. On the one hand, the district court has explicitly ordered that Roark's task is to inform Hall of a potential conflict. However, on the other hand, the court has instructed Roark to present his findings to the court.

In response, the State argues that the district court did not err in ordering Roark to conduct a thorough and searching inquiry into the SAPD's involvement in Hall II. The State cites to *Knix v. State*, for the proposition that appointing independent conflict counsel is appropriate "upon a substantial showing of necessity" even if the attorney-client privilege may be intruded upon. 922 P.2d 913, 919 n.7 (Alaska 1996). According to the State, the actions of the SAPD and Benjamin along with the contents of the Ex Parte Notice created a "substantial showing of necessity" to justify any intrusion.

On appeal, Hall has raised issues with respect to both client-lawyer confidentiality and the attorney-client privilege. Although the two are related and have some overlap, client-lawyer confidentiality is broader than the attorney-client privilege.

> The attorney-client privilege [applies] in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. *The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.*

I.R.P.C. 1.6 cmt. 3 (emphasis added).

The attorney-client privilege is codified at I.C. § 9-203, which provides that because "[t]here are particular relations in which it is the policy of the law to encourage confidence … [a]n attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment." I.C. § 9-203(2). "Communications between attorney and client made in the course of professional employment are protected by the attorney-client privilege." *State v. Iwakiri*, 106 Idaho 618, 621, 682 P.2d 571, 574 (1984) (citing I.C. § 9-203). Idaho Rule of Evidence 502 further specifies the contours of the attorney-client privilege in Idaho, it provides:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the

16

rendition of professional legal services to the client which were made [] between the client or the client's representative and the client's lawyer or the lawyer's representative.

I.R.E. 502(b). The attorney-client privilege under I.R.E. 502 applies in "all actions, cases and proceedings in the courts of the State of Idaho and all actions, cases and proceedings to which rules of evidence are applicable, except as hereinafter provided." I.R.E. 101(b).

Client-lawyer confidentiality is covered by I.R.P.C. 1.6, which states that "[a] lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)." I.R.P.C. 1.6(a). Under (b), "[a] lawyer *may* reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary … to comply with other law or a court order." I.R.P.C. 1.6(b)(6) (emphasis added). The district court concluded that I.R.P.C. 1.6(b)(6) provided it with authority to give Roark full access to the SAPD's client files and to allow him to depose all SAPD employees. This was an error.

In this case, the district court's order violates Hall's attorney-client privilege because it gives Roark carte blanche to access all of the SAPD's files relating to its representation of Hall, which undoubtedly contains some privileged information, which has not been waived by Hall and is completely irrelevant to determine whether a conflict exists in this case.

Furthermore, neither of the district court's memorandum decisions addressed the attorney-client privilege issues raised by Hall. Instead, the court focused only on I.R.P.C 1.6, client confidentiality, and stated that cooperation and disclosure on the part of the SAPD was required because a lawyer may reveal information related to the representation of a client if the disclosure is necessary to "to comply with other law or a court order." This is accurate under the terms of I.R.P.C. 1.6(b)(6), but a lawful court order only *allows* Hall's attorney to disclose confidential information, it does not diminish Hall's right to assert his attorney-client privilege. *See* I.R.P.C. 1.6.

The district court repeatedly stated that it had an affirmative duty to inquire into the SAPD's potential conflict of interest. Yet, the court made absolutely no inquiry. Instead, the court abdicated its duty to inquire in favor of Roark by ordering him to conduct an investigation and report back to the court–while also representing Hall and advising him on conflict issues. The district court had multiple opportunities to question Benjamin as part of its believed duty to

17

inquire—it failed to do so. Had the court made any inquiry of Benjamin, Hall could have asserted his privilege as it related to specific information, and this Court would have before it clear evidentiary issues to rule on. However, that did not occur and now, on appeal, this Court has no actual evidence before it to make a ruling regarding whether requiring Hall or his counsel to disclose certain information would violate Hall's attorney-client privilege.

We can say, however, that giving Roark authority to conduct a thorough and searching review of the SAPD's pre-trial, trial and presentence involvement in the trial of Hall II up to the SAPD's appointment amounts to an unguided search for a possible conflict that clearly violates Hall's right to assert his right of privileged communication with his attorney.

## IV. CONCLUSION

Hall has a statutory right to conflict-free counsel under I.C.R. 44.2(1). A Petitioner's right to conflict-free counsel when seeking post-conviction relief from a death sentence is analyzed under this Court's Sixth Amendment framework. The district court's order appointing Keith Roark as independent conflict counsel and ordering the SAPD to pay for Roark's services is vacated.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.