**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40082**

| | |
|---|---|
| STATE OF IDAHO, | ) 2015 Unpublished Opinion No. 352 |
| | ) |
| Plaintiff-Respondent, | ) Filed: February 13, 2015 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| MELISA RENEE BATES, | ) THIS IS AN UNPUBLISHED |
| | ) OPINION AND SHALL NOT |
| Defendant-Appellant. | ) BE CITED AS AUTHORITY |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Benewah County. Hon. Fred M. Gibler, District Judge.

Order denying motion to withdraw guilty plea, <u>affirmed</u>; order denying I.C.R. 35 motion, <u>affirmed</u>; judgment of conviction and sentence of life with thirty years determinate for second degree murder, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Shawn F. Wilkerson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Melisa Renee Bates pled guilty to second degree murder, Idaho Code §§ 18-4001 and 18-4003(g). After she was sentenced, she filed a motion to withdraw her guilty plea and an Idaho Criminal Rule 35 motion, seeking leniency regarding her sentence. Her motions were denied and Bates appealed. She argues that the district court erred by denying her motion to withdraw her guilty plea and failed to inquire about her request for substitute counsel which was contained within her motion. She also argues that the district court abused its discretion by imposing an excessive sentence and denying her motion for leniency.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Police responded to a call reporting a missing person, Robert Marek. When they arrived at Marek's home in Saint Maries, they noticed a fire in a fire pit in the backyard and what

1

appeared to be human body parts located in and around the fire.  An autopsy later confirmed that there were human remains around the fire, which were those of Marek.  Upon being interrogated by the police, Bates, Marek's niece who had recently been staying at his home, admitted that she had killed Marek.  Bates was charged with first degree murder.

The district court ordered mediation, which resulted in a plea agreement whereby Bates pled guilty to second degree murder by way of an *Alford*[1] plea.  Thereafter, the district judge imposed a unified life sentence with thirty years determinate.  Bates timely appealed from the judgment of conviction and sentence, arguing that her sentence was excessive.  The State Appellate Public Defender (SAPD) was appointed to represent Bates on appeal, but her previously-appointed trial counsel continued to represent Bates in the district court.

Bates filed an I.C.R. 35 motion requesting leniency, which was denied by the district court.  While her appeal was pending, Bates sent the district court a handwritten document entitled "Motion to withdraw guilty plea pursuant to idaho criminal rule 33c."  Within the document, contained in a section labeled "Affidavit" but unsworn, Bates wrote "Motion of new counsel."  Approximately six months later, Bates' trial counsel filed a motion to withdraw the guilty plea, which was denied by the district court after a hearing.

Bates contends that the court erred by denying her motion to withdraw her guilty plea.  Bates further argues that the statement "Motion of new counsel" within her handwritten document to the court was a request for substitute counsel and that the district court erred when it failed to inquire into this request.  Bates also argues that the district court erred by denying her Rule 35 motion for leniency.

## II.

## ANALYSIS

### A.  Motion to Withdraw Guilty Plea

Bates argues that the district court abused its discretion when it denied her motion to withdraw her guilty plea.  Idaho Criminal Rule 33(c) states:  "A motion to withdraw a plea of guilty may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

2

and permit the defendant to withdraw defendant's plea." The rule distinguishes between pleas made prior to and after sentencing, exacting a less rigorous measure of proof for presentence motions. *State v. Dopp*, 124 Idaho 481, 485, 861 P.2d 51, 55 (1993). To withdraw a guilty plea prior to sentencing, the defendant must show a just reason for withdrawing the plea. *Id.* If he does so, then the State may avoid the granting of the motion by showing that prejudice would result if the plea were withdrawn. *Id.* A motion to withdraw a guilty plea brought after sentencing will be granted only to correct manifest injustice. *State v. Flowers*, 150 Idaho 568, 571, 249 P.3d 367, 370 (2011); *State v. Heredia*, 144 Idaho 95, 97, 156 P.3d 1193, 1195 (2007). The stricter standard after sentencing is justified to ensure that the accused is not encouraged to plead guilty to test the weight of potential punishment and withdraw the plea if the sentence were unexpectedly severe. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986). Accordingly, in cases involving a motion to withdraw a plea after sentencing, appellate review is limited to reviewing the record and determining whether the trial court abused its sound discretion in determining that no manifest injustice would occur if the defendant was prohibited from withdrawing his or her plea. *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992).

If a plea was not taken in compliance with constitutional due process standards, which requires that a guilty plea be made voluntarily, knowingly, and intelligently, then "manifest injustice" or the lower standard of "just reason" will be established as a matter of law. *Heredia*, 144 Idaho at 97, 156 P.3d at 1195; *State v. Stone*, 147 Idaho 330, 333, 208 P.3d 734, 737 (Ct. App. 2009); *State v. Shook*, 144 Idaho 858, 859, 172 P.3d 1133, 1334 (Ct. App. 2007); *State v. Huffman*, 137 Idaho 886, 887, 55 P.3d 879, 880 (Ct. App. 2002). A prima facie showing of compliance with due process requirements is made when the minimum requirements of Idaho Criminal Rule 11 have been met.[2] *Ray v. State*, 133 Idaho 96, 99, 982 P.2d 931, 934 (1999); *Shook*, 144 Idaho at 859, 172 P.3d at 1134. That rule provides that when the trial court accepts a guilty plea, "the record of the entire proceedings, including reasonable inferences drawn therefrom, must show: . . . The defendant was informed of the consequences of the plea,

---

[2]     The procedures outlined in I.C.R. 11(c) are intended to protect the constitutional requirement that guilty pleas be entered voluntarily, knowingly, and intelligently, but the procedures of Rule 11(c) themselves are not constitutionally mandated. *State v. Weber*, 140 Idaho 89, 95, 90 P.3d 314, 320 (2004); *accord McCarthy v. United States*, 394 U.S. 459, 465 (1969). *See also State v. Huffman*, 137 Idaho 886, 887-88, 55 P.3d 879, 880-81 (Ct. App. 2002).

including minimum and maximum punishments, and other direct consequences which may apply." I.C.R. 11(c)(2).

However, not all Rule 11 violations invalidate a guilty plea. *State v. Thomas*, 154 Idaho 305, 308, 297 P.3d 268, 271 (Ct. App. 2013). The Idaho Criminal Rules provide, "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." I.C.R. 52. In *Thomas*, we held that the court's misstatement of the maximum sentence in a plea colloquy was not manifest injustice where the court in fact imposed a sentence within the range described during the colloquy. *Thomas*, 154 Idaho at 308, 297 P.3d at 271. Such an error is harmless "unless the defendant can demonstrate, for example, that the misinformation at the Rule 11 hearing led the defendant to expect a lesser penalty than he actually received." *Id.* Thomas did not allege that he would not have pled guilty had he been correctly informed about the maximum sentence he faced, nor did he present any evidence or argument as to how he was prejudiced when he received no greater sentence than that of which he was forewarned. *Id.* Therefore, the error was harmless. *Id.*

Here, Bates was informed that she faced a maximum penalty of life in prison but she was not informed on the record of the mandatory minimum sentence of ten years. However, Bates has failed to show how this omission resulted in manifest injustice. Similar to *Thomas*, Bates has not demonstrated, or even claimed, that she would not have pled guilty had she been informed of the mandatory minimum that she faced, nor has she presented any argument as to how she was prejudiced when she has received a sentence consistent with that of which she was forewarned. Because Bates has failed to demonstrate how the Rule 11 violation led her to expect a lesser penalty than she actually received, the error is harmless.

On appeal, Bates also asserts that her guilty plea was the product of coercion and fraud and that the State withheld exculpatory evidence. In a handwritten document, which Bates incorrectly classifies as an affidavit, attached to her motion to withdraw her guilty plea, she wrote the following:

> I was pursistantly [sic] forced in to [sic] signing I was tricked by only reading last page last signing after just haven [sic] read a continue 2 second x second day of meeting, for a more time to come up with money for trial

4

> Not properly investigated knowledge with held [sic] knowledge of others confession and explanasion [sic] the cover up

> Motion of new counsel

Bates' handwritten document was not a proper affidavit brought before the district court, and trial counsel offered no evidence or argument as to what Bates meant by her assertions. She acknowledges that the statements are "somewhat unclear." There is no indication in the record as to who "tricked" her or failed to "properly investigate." To the extent that her assertions relate to the plea agreement, her present attempt to characterize them to mean that her plea was the product of coercion and fraud is unavailing.

The record amply demonstrates that Bates was aware of the contents of the plea agreement. Prior to entry of her plea, and with the aid of a local judge, Bates and her attorney engaged in mediation with the prosecution, which ultimately resulted in the plea agreement. Further, before accepting Bates' plea, the district court recited the contents of the plea agreement to Bates and ensured that Bates was aware of the consequences of her plea. Bates has failed to demonstrate any manifest injustice. The district court did not abuse its discretion in denying Bates' motion to withdraw her guilty plea.

## B. Motion for New Counsel

Bates contends that she requested appointment of substitute counsel as a subcomponent of her motion to withdraw her guilty plea and that the district court erred when it failed to afford her the opportunity to explain the reasons for her request. The parties preliminarily dispute the nature of Bates' right to the effective assistance of counsel. We have already addressed this argument in our recent case, *State v. Bias*, __ Idaho __, __ P.3d __ (Ct. App. 2014), where we held that a person raising post-judgment claims is entitled to the assistance of counsel. Therefore, Bates was statutorily entitled to counsel pursuant to I.C. § 19-852 unless her motions were frivolous.[3] *Bias*, ___ Idaho at ___, ___ P.3d at ___.

---

[3]     The relevant portions of Idaho Code § 19-852 state:

> (1) An indigent person who is . . . being detained under a conviction of, a serious crime, is entitled:
>         (a) To be represented by an attorney to the same extent as a person having his own counsel is so entitled; and
>         . . . .

5

However, the right to court-appointed counsel does not necessarily include the right to an attorney of one's choice. *State v. Clayton*, 100 Idaho 896, 897, 606 P.2d 1000, 1001 (1980). Nonetheless, where the defendant requests substitute counsel and "after having been made aware by the court of the problems involved," the trial court has an obligation "to afford [the] defendant a full and fair opportunity to present the facts and reasons in support of his motion . . . ." *Id.* at 898, 606 P.2d at 1002. While the duty to inquire is not a high burden, as we noted in *Bias*, its exact scope is fact-dependent. *Bias*, __ Idaho at __, __ P.3d at __.

In a motion for substitute counsel, a defendant's general averments as to a conflict with his counsel warrant further investigation by the court to develop a factual basis to adjudicate the motion. *State v. Lippert*, 145 Idaho 586, 594, 181 P.3d 512, 522 (Ct. App. 2007) (the defendant asserted that counsel failed to adequately consult with him); *Bias*, __ Idaho at __, __ P.3d __ (the defendant asserted that poor advice by his attorney caused the attorney/client relationship to break down). But, the duty to inquire "is not to be confused with when the trial court is aware of a vague, unspecified possibility of a conflict." *Hall v. State*, 155 Idaho 610, 619, 315 P.3d 798, 807 (2013). In *Hall*, the SAPD sent an ex parte notice to the district court of a "possible conflict of interest regarding the SAPD representing Hall in his post-conviction proceedings." The Idaho Supreme Court found that the ex parte notice "only raised a 'vague, unspecified possibility of conflict,'" which was insufficient to trigger the district court's duty to inquire. *Id.*

Here, Bates has made no averments that a problem existed between her and her trial counsel. Bates attempted to file a pro se motion to withdraw her guilty plea in the handwritten letter detailed above.[4] At the bottom of her letter, Bates wrote "Motion of new counsel." The

---

> (2) An indigent person who is entitled to be represented by an attorney under subsection (1) of this section is entitled:
>
> > . . . .
> > (c) To be represented in any other post-conviction or post-commitment proceeding that the attorney or the indigent person considers appropriate, unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense and is therefore a frivolous proceeding.

[4] Because Bates was represented by counsel at the time, her pro se "motion" was inappropriate. As such, the record reflects that the district court did not act on her motion until a

6

parties agree that the factual statements within her letter are, at best, somewhat unclear. Yet, Bates now argues that when the phrase "Motion of new counsel" is read in conjunction with the preceding paragraphs of her motion to withdraw her guilty plea, it indicates that she wanted a substitution of trial counsel because she was tricked into agreeing to plead guilty and that there was a cover up of another person who confessed to the killing. However, Bates' statements at the plea colloquy belie her argument that her trial counsel forced or tricked her into signing any document relevant to her guilty plea or that she was blaming her counsel, as opposed to the State, for not conducting an adequate investigation.

During the plea colloquy, Bates told the district court that she received no promises for her plea except for those stated in the plea agreement and that she understood the agreement. She asserted that she believed the State's investigation of the crime had been inadequate, but that she wished to enter the guilty plea nonetheless. Furthermore, she expressly stated that she was satisfied by her counsel's performance in the case when asked by the district court.

While a general averment of dissatisfaction with counsel warrants further inquiry, an unspecified indication that someone may want substitute counsel does not trigger the court's duty to inquire. Unlike the general averments of a conflict in *Lippert* and *Bias*, Bates' statement in her ex parte letter is more akin to the vague statement in *Hall*, providing little to no information addressing a potential problem with trial counsel. Bates' buried statement, "Motion of new counsel," within her otherwise disjointed letter characterized as a motion to withdraw her guilty plea cannot be read as a general averment of a problem with counsel. As such, it did not trigger the district court's duty to inquire.

## C. Bates' Sentence

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it

proper motion to withdraw her guilty plea was brought through her trial counsel approximately six months later.

appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Bates argues the district court abused its discretion in sentencing her to life with thirty years determinate because of her mental health issues. When imposing Bates' sentence, the district court specifically acknowledged the governing goals of sentencing: protection of society, rehabilitation, deterrence, and punishment. The district court emphasized that "where we have a homicide involved, protection of the public becomes by far the most important factor," and that "in this case rehabilitation is obviously a very important factor given the mental health issues." The court did not ignore Bates' mental health issues in fashioning an appropriate sentence, but went to great lengths to discuss the need for rehabilitation given her mental illness.

In addition to considering Bates' mental health issues, the court considered the seriousness of the crime, which it characterized as "a particularly gruesome murder." Bates pled guilty to second degree murder of her uncle whom she was living with at the time. Bates obtained a gun from beside the victim's nightstand and shot him while he was outside, causing him to fall to the ground where she then beat him with a metal rod. Bates then built a fire pit around the victim's body, placed several vehicle tires atop of his body, and lit them on fire, leaving the victim to burn. After the fire burned down, she decapitated the victim with an axe. She then threw the gun into the river, gathered her belongings, and fled to a nearby county where she was apprehended by law enforcement while waiting to catch a ferry.

The court found it particularly troubling that although Bates had received mental health treatment in the past, "the professionals thought the treatment was successful. Yet after that treatment, after her release, we have the horrible homicide that we're sentencing her for here today." Accordingly, the court found that protection of the community required that Bates be in a secure setting and that progress on her mental health issues, such that she would no longer

8

represent a significant threat, would come only by prolonged and intense treatment, both of which militated in favor of a longer sentence. The district court carefully reviewed the facts of the case, considered the mitigating information presented by Bates, and concluded the sentence was necessary to achieve the goals of sentencing. Having reviewed the record, this Court cannot say the district court abused its discretion.

**D.     Rule 35**

A motion for reduction of sentence under I.C.R. 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Gill*, 150 Idaho 183, 186, 244 P.3d 1269, 1272 (Ct. App. 2010). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984).

Bates asserts she provided new information to the court which demonstrated that she was making rehabilitative progress.[5] Assuming the information constituted new evidence, having reviewed the record, we cannot say that the district court abused its discretion in denying Bates' motion for leniency.

**III.**

**CONCLUSION**

The district court did not abuse its discretion in denying Bates' motion to withdraw her guilty plea. Additionally, Bates made no averment that there was a problem with her trial counsel and as such, it did not trigger the district court's duty to inquire relative to appointing substitute counsel. Finally, the court did not abuse its discretion in sentencing Bates or in denying her motion for leniency. Accordingly, the district court's denial of Bates' motion to

---

[5]     Bates asserts that after she was sentenced, she completed the "Living with Mental Illness Class" and now works as a janitor where she sweeps, mops, cleans rooms, and mows yards, earning $0.30 per hour. She further contends that she has not been a problem in the facility.

withdraw her guilty plea, denial of Bates' Rule 35 motion, and Bates' judgment of conviction and sentence are affirmed.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR.**